## Rosamond S. Sherman v. Edward G. Johnson.

Upon the trial of a prosecution for bastardy the mother is a competent witness, under the statute, in regard to the filiation of the child; but her testimony must be confined to the question of the defendant's liability, under the statute, and cannot be received upon the question, whether a release, previously executed by her, was obtained by the defendant fraudulently.

A release, executed by the mother to the putative father of a bastard child, purporting to discharge all claim upon him on account of his being the father of the child, will only operate to release the claim of the mother, but will not in any manner affect the right of the overseer of the poor of the town to commence a prosecution, or to control one previously commenced.

This was a complaint, under the statute, charging the defendant as the father of the plaintiff's bastard child. Plea, not guilty, with notice of special matter of defence. The complaint was dated February 27, 1845. The overseer of the poor of the town of Fayston, where the plaintiff had her legal settlement at the date of the complaint, filed in the county court, November Term, 1845, a certificate, under the statute, that he should control the prosecution, in behalf of the town ;—and the prosecution was afterwards conducted by him. Trial by jury, April Term, 1846,—Redfield, J., presiding.

Sherman *v.* Johnson.

On trial the defendant conceded the cause of action, as alleged in the complaint, and offered in evidence a release, executed by the mother of the bastard child, dated February 5, 1845, and purporting to discharge him from all claim, or demand, which she had, or might have, against him, as the father of the child, and for having begotten the same, and from all suits which she had brought or might bring against him therefor, and from all other claims whatsoever, to the date of the release. To this evidence the plaintiff objected, as being inoperative against the town of Fayston; but the objection was overruled by the court, *pro forma*, and the evidence admitted.

The plaintiff was then offered as a witness, to prove that the release was fraudulently obtained from her, without her knowing its import, or contents. The defendant objected to the competency of the plaintiff, as a witness to this point, and she was, *pro forma*, excluded by the court.

Verdict for defendant. Exceptions by plaintiff.

*L. B. Peck* and *S. B. Colby* for plaintiff.

1. The release ought not to defeat the rights of the town; a fair and liberal construction of the statute of 1843 avoids the effect of it; and it has been the constant policy of the legislature to secure indemnity to towns in these cases. Tolm. St. 378. Sl. St. 367. Rev. St. c. 67. Acts of 1843, p. 19.

2. The testimony of the plaintiff, as to the discharge, was admissible. She is made a witness by statute, without limit as to the facts, to which she may testify. She is deemed competent to prove the confessions of the other party. *Mather* v. *Clark*, 2 Aik. 209. Why any other limit, than in an action on book account? where a party may testify to what was included in a former judgment, to a settlement, or payment; *McLaughlin* v. *Hill*, 6 Vt. 20; especially as she is without interest; 1 Day 278.

*Kasson & Buckley* for defendant.

1. The interest of the town, acquired by the overseer's taking the control of the prosecution, merely gives the town a *lien*, but leaves the *general* interest, or property, in the woman. Hence, by section 12 of chapter 67 of the Revised Statutes, the overseer cannot com-

promise, without the consent of the woman. By section 15 she may terminate this right of control by an indemnity to the town, and so claim the whole benefit of the prosecution. So that she is, in any case, interested in the event of the suit. Being thus interested, she cannot testify, except by virtue of some statute, which so far abrogates the common law. It is claimed, that section 16 of the statute renders her competent to set aside, by her own evidence a release executed by her. The statute, being in derogation of the common law, is to be strictly construed. The words are,—" On the trial of the issue, whether the defendant is guilty, or not guilty, such woman shall be a competent witness," &c. That issue was conceded by the defendant; and thus the purpose of the statute was answered. *Holcomb* v. *Stimpson*, 8 Vt. 144. *Gafferey* v. *Austin*, Ib. 71.

2. By section 14 of chapter 67 of the Revised Statutes a release could not be given, after the overseer had taken control of the prosecution,—or, if he had not taken control of it, a release could not be given after three months after the arrest. This was repealed by the statute of 1843, which provides only for cases, where a man is charged upon compulsory examination. So that, as the law now stands, a man may obtain a release of the cause of action, if the overseer have not interfered, at any time, whether before or after three months after arrest, except in cases, where the charge is compulsory. The legislature intended to favor such arrangements.

The opinion of the court was delivered by

REDFIELD, J. The first question made in this case is, whether the plaintiff is a competent witness to impeach her own discharge, on the trial of a case like the present. It seems very clear to us, that she is not. The statute of 1822 provided, " That on the trial of the issue of whether chargeable or not, such woman shall be a competent witness." The expression of the Revised Statute is, " On the trial of the issue, whether the defendant is guilty or not." We suppose both forms of language were intended to express the same idea. And the mother being admitted a witness, not only contrary to the general rule excluding the parties and those interested in the suit from giving evidence in the trial, but also contrary to the rule adopted in this proceeding, as to the other party, we think

72

the privilege should be construed strictly, and not extended beyond the mere necessity, which gave rise to it.

There was a necessity of making the mother a witness in regard *to the filiation of the child,* in order to make the prosecution of any avail whatever. But beyond that point no such necessity exists. We think such is the fair import of the statute words, " upon the trial of the issue, whether the defendant is guilty, or not." It surely could not consist with a decent respect for the legislature, to suppose that the statute was intended to make the competency of the testimony of the plaintiff to depend upon the *form,* instead of *the merits of the issue.* The competency of the plaintiff's testimony must depend rather upon the *facts to be tried,* than upon the *form, in which the pleadings are drawn.* We think her testimony must be confined to the trial of the question of the defendant's liability, under the statute, aside from the contract of the parties releasing the defendant, or any similar question, foreign to the primary liability.

In regard to the effect of the release of the mother upon the rights of the town, liable to be charged with the support of the child, there would, perhaps, be no difficulty, if the legislature had not interfered with the matter. It would be reasonable, perhaps, that the release of the mother should not operate *beyond her interest.* The rights of the town are not only independent of those of the mother, but grow out of their own liabilities, which are consequent upon the delinquency of the mother, in maintaining her child. Under such a state of facts it would seem not a little remarkable, that the release of the mother, given at any time, should defeat the rights of the town. Few, I think, would have had much difficulty upon the subject, in the absence of any statute. It would be reasonable and natural, and what every one would expect, that the release should only operate upon the interest of the mother. But to save all cavil, the legislature has from time to time passed several *statutes* upon the subject, each more dark and inexplicable than its predecessor, which it was intended to illuminate, until now it is wholly impossible to conjecture, from the *words* of the statute, what could be the precise intention of the framers. That perhaps, of itself, is sufficient reason, why the statute should be regarded as wholly inoperative, and the matter stand as it did before, leaving the release of the mother to operate to the extent, only, of her rights.

But spelling out our course by the best lights we can gain, we conjecture this must have been the intention of the legislature, so far as such enigmatical and abstruse combinations of words can be said, reasonably, to spring from any distinct purpose. It seems to us to have been, in no small degree, the result of accident and haste, more than of design, or purpose.

The first statute upon this subject in the state was passed in 1779, is very brief, and contains no allusion to this particular point. It is probably an epitome of the Connecticut statute upon that subject, then in force. The remedy there provided seems to have been intended mainly for the mother, except that the defendant was, if found guilty, to be required to give security to save the town harmless. This statute was substantially re-enacted in 1787, with an additional provision, authorizing the selectmen, in certain cases, to " bring forward a suit, in behalf of such town, or to take up and pursue any suit began by the mother." Thus the matter stood until 1797, when an extended statute was presented by the able revisers of that day and adopted by the legislature, by which the right to prosecute, in the first instance, was given to the town liable for the support of the child, and only to the mother upon the default of the town to bring forward such prosecution. The prosecution on behalf of the town was to be in the name of the town, as in England it is in the name of the king. Nothing is said in regard to compromises,—so eminent a jurist as Nathaniel Chipman not feeling the importance of making that matter any more intelligible, than the nature of the rights of those concerned, and the reason of the thing, seemed to make it.

That statute remained in force, with slight modifications, until 1822, when another digest of the law upon this subject was enacted. Here, for the first time, as far as I can find, the subject of compromising such suits is made the basis of special legislation. The second proviso to the fifth section of that statute embraces the matter now under consideration. The provisions here found, although not very clearly expressed, are, if I fully comprehend their import, well enough, and wholly reconcilable with reason and common sense. It is in these words, " Provided, that until three months after the ar-" rest of such person, so charged, or after such overseers shall have " commenced any such prosecution, or taken upon themselves the

" control," &c., no compromise made with the woman, without the consent of the overseers, shall be valid. The import of this proviso is, if it means any thing sensible, or intelligible, that the overseers shall have until three months after the arrest of the defendant to take control of the prosecution, and until that time no compromise of the matter shall operate against them; but after that, *if they do not interfere*, the mother may settle the matter, not only for herself, but against them. And if the overseers do interfere to control the prosecution *within three months*, then the right of the mother to compromise is also suspended, *until the town is indemnified*. Any other construction would make the whole proviso the most absurd nonsense; and this is entirely consistent with the strictest and most literal import of the words used, giving every word its full and natural force.

In the revision of this statute, in 1839, the soul of the former portion of this proviso seems to have suffered a most unfortunate *metempsychosis*, if it be not absolutely *annihilated*. It seems, in regard to the limitation of the three months, to be flatly reversed, by substituting the word " *after*" for the word " *until*." This will be apparent, in a moment, by looking at the evil to be remedied. The three months after the arrest were given, that these compromises might not be made *silently* and *covertly*, without the knowledge of the overseer. But by giving that time *after the arrest*, it was supposed the overseer must have notice. But to say that the mother may have all that time, to *compromise* and *defeat* the rights of the overseer, is to suppose the legislature intended to *encourage these secret compromises*, without the knowledge of the overseer, and *in fraud of his rights ;* which is more absurd than I would be willing to suppose they would be of *design*, although some of their acts, *if literally interpreted*, would doubtless lead to such a result. I have no doubt, that the revision of 1839 was intended to leave the matter as it stood before, removing some obscurity, which is done in regard to compromises made after the overseer shall commence, or control, a prosecution of this kind.

Thus the matter stood until 1843, when a new provision was made for compulsory prosecutions, to be brought forward by the overseer of the poor, where the woman refuses or neglects to prosecute, under the Revised Statutes, for thirty days after the birth of

the child. This statute repeals the provision of the Revised Statutes, as to compromises of the mother, and enacts a section upon this subject, which, in terms, extends to prosecutions under this new statute and the Revised Statutes. No question is made, in the argument, but that this section does make *all releases* of the mother wholly inoperative against the overseer, in all cases, where the prosecution is under the statute of 1843; and no rational conjecture has been offered, why any distinction should be made, as to the effect of the release of the mother, whether the *form* of the prosecution is under the Revised Statutes and in the name of the mother, but for the benefit of the town, or under the statute of 1843, and in the *name* of the overseer. For the *same case* may, many times, admit of being prosecuted in *either mode*,—as, where the mother has "*neglected*" to institute a prosecution under the Revised Statutes for more than thirty days after the birth of the child, but is still *willing* to have the prosecution go forward in her name, under the Revised Statutes, it cannot be doubted, I apprehend, that the overseer might prosecute in either *form ;* and surely it could not be supposed, that the courts should adopt such a construction of the statute, that the *effect* of the release of the mother, upon the rights of the overseer, should depend upon the *form* of the complaint; certainly not, unless such is the necessary and only construction, which the statute will bear.

It seems to us, then, that, making reasonable allowance for the jumble and confusion of ideas, which may be supposed to result from an attempt to combine two statutes, that the fifth section of the statute of 1843 means nothing more, than that no compromise, made with the mother without the consent of the overseer, shall defeat his right, either in a case where he prosecutes in his own name, or takes the control of, or institutes, a suit in the name of the mother. Any other construction will lead us into the same absurdities, already alluded to. This is sensible, and just, and such a view as may be supposed to commend itself to men "noted for wisdom;" and the limited and absurd construction, which is contended for on the part of the defendant, it seems to us, would be a "reproach to any people." And if the statute is simple nonsense and therefore nugatory, the result, as above stated, will be the same ; the release will only extend to the interest of the releasor.

Berlin *v.* Morristown.

But we think the words of the statute of 1843 will fairly bear this interpretation. The first portion of the fifth section fairly imports this; "so charged" signifying no more than charged with being the father of the child, in any way; but to remove all doubts, the latter part of the section extends it, in terms, to prosecutions under the Revised Statutes, where the overseer either institutes, or controls, the prosecution. It is, indeed, awkwardly expressed; but that results from copying the language of the Revised Statutes, and *wholly omitting that portion, which had been so translated from the statute of 1822, as to make it wholly incomprehensible, except by reference to that statute, which there was not time to do;* so the draughtsman copied as much as could be understood from the language, and very naturally concluded, that the former portion of the section cut up *all compromises* made with the mother, and that it was only necessary to extend it to the Revised Statutes.

Judgment reversed.