JOEL HALE, *overseer of the poor of West Windsor, v.* HIRAM TURNER.

*Bastardy. Complaint by overseer of poor. Settlement with the mother. Warning out process. Order of removal.*

No certificate of his intention to prosecute or control the proceedings is required from an overseer of the poor who commences a prosecution against the father by a complaint against, and examination of the mother in pursuance of sec. 17 of chap. 71 of the Compiled Statutes.

A settlement with the mother of a bastard child, which is made with the assent of the overseer of the poor of the town in which she resides, is not available against a prosecution by the overseer of the poor of the town in which she has her legal settlement, and to which she becomes chargeable.

A warning out process, under the law of 1801, in which the officer's return only shows that at the time and in the town specified he left a true and attested copy of the precept with his return "at the last place of abode" of the person named, is defective and inoperative:

An order of removal, unappealed from, conclusive as to settlement.

BASTARDY PROSECUTION. This was a proceeding commenced by a complaint of the plaintiff to a justice of the peace, setting forth that Marcia Ann Lewis, a single woman, had been delivered of a bastard child, with the support of which the town of West Windsor was chargeable, and had neglected for more than thirty days after the child was born to charge any person with being the father, &c.; upon which complaint a warrant issued, upon which the said Marcia was apprehended, and, upon being examined, charged the defendant with being the father of the child; and thereupon a warrant issued upon which the defendant was arrested and become recognized for his appearance before the county court, and abiding its orders, &c.

In the county court the defendant plead, in addition to the general issue, that the said Marcia, while pregnant with said child, was a resident of and had her home in Tunbridge, and while so pregnant she received of the defendant one hundred and sixty-five dollars, in full satisfaction of all claim which she had upon him by reason of his being the father of said child, and discharged him from all liability for the support of said child, and that the over-

seer of the poor of said Tunbridge consented to said settlement, &c. To this plea the plaintiff demurred, and the county court, May Term, 1856,— UNDERWOOD, J., presiding,— adjudged the plea insufficient, to which the defendant excepted.

The defendant then moved to dismiss the case because the plaintiff had not filed with the justice before whom the prosecution was commenced, or with the clerk of the court, a certificate of his intention to prosecute the same. The court overruled the motion, to which the defendant also excepted.

Upon a trial by the court, on the plea of not guilty, it appeared that William Lewis, the grandfather of the said Marcia, lived in 1808 in that part of the old town of Windsor which in the division of that town fell in the limits of West Windsor, and that he had resided there ever since; and that in 1808 he was warned out by a process, the return upon which was as follows, (several persons besides the said William Lewis being named in the warning):

" At Windsor, the twenty-third, twenty-fifth and twenty-sixth days of April, 1808, I served this precept by leaving true and attested copies of this precept, with this my return hereon, at the last place of abode of the following persons, [among others] William Lewis. Attest, JOEL LULL, *Constable.*"

It further appeared that the said Marcia's father had a derivative settlement from her grandfather, and that she had her settlement derived from her father; and that, by agreement, Windsor and West Windsor were to support paupers that might be returned upon them according to the original place of residence, as it might fall within one town or the other; and that said Marcia, after her child was born, was removed from Braintree to West Windsor by an order of justices, unappealed from.

It was conceded that the defendant was the father of the child, and that the said Marcia was an unmarried woman before and at the birth of her child, and at the time of the trial; and judgment was rendered that the defendant was guilty, and the father of the bastard child, and that he pay ——— dollars towards the support of said child; to which the defendant also excepted.

*W. Hebard,* for the defendant.

I. There is no certificate of intention to prosecute filed with the magistrate as the statute requires ; Compiled Statute 425, sec. 13. Sec. 17 of Compiled Statutes does not repeal sec. 13, nor are the two sections inconsistent with each other. Sec. 2 of act of 1843, (sec. 18 of Comp. Stat.,) provides that the same proceedings shall be had as in the act to which that was in *addition,* and the act to which that is "*in addition*" requires the overseer to certify his intention to prosecute.

II. The settlement made by the defendant with said Marcia was, in terms, in accordance with the statute ; and. was made with the consent of the overseer of the poor of Tunbridge, where the said Marcia was then residing, and where she must have applied for assistance, if she needed it.

III. The order of removal to West Windsor does not affect the defendant unless that is shown to be her place of settlement. If she has a settlement there, it was derived from her grandfather, through her father. And the case finds that her grandfather was warned out in 1808.

*Washburn & Marsh,* for the plaintiff.

The opinion of the court was delivered by

REDFIELD, CH. J.  I. It is claimed that the proceedings are defective for not containing a certificate of the overseer of the poor of his intention to prosecute or control the proceedings, according to sec. 13 of chapter 71 of the Compiled Statutes.

But that section was a portion of the Revised Statutes of 1839, and has exclusive reference to such prosecutions as were then allowed by the existing statutes. The present proceedings are based upon the statute of 1843, and are of a totally different character from anything in use before that time. This proceeding is originally instituted by a complaint of the overseer of the poor of the town liable to support the child, against the mother, and she is to be examined before the justice, and the examination taken down in writing, and the person charged by her to be brought before the justice, and proceeded with as in other cases, except

that the prosecution is exclusively on behalf of the town, and in the name of the town, or the overseer, which is the same thing. But this statute required no certificate, and the section of the former statute on that subject will not apply to this proceeding, having reference only, in its terms or intention, to prosecutions in the name of the mother. It would seem very needless to require a certificate of the overseer of his intention to control a prosecution in his own name, and over which no one else had any control whatever.

II. The settlement set forth in the plea in bar is not different in legal effect from that urged in *Sherman* v. *Johnson*, 20 Vt. 567, and held bad. The consent of the overseer of the poor of the town where the mother resided could avail nothing, unless such overseer could bring the prosecution, or control it if brought by the mother. And to do that he must be the overseer of the poor in the town liable to become chargeable for the support of the child. And as the child took the settlement of the mother, and her settlement was not in Tunbridge, the consent of the overseer of that town could not render the compromise binding upon the town of her legal settlement.

III. The legal settlement of the mother was in West Windsor, derived from her grandfather, if the warning out was defective. The decision in the case of *Barre* v. *Morristown*, 4 Vt. 574, seems conclusively to show that it was so. The return of the officer in this case seems quite as defective as in that.

The order of removal too, unappealed from, is conclusive of the settlement.

Judgment affirmed.