# CHARLESTON.

## BURR v. PHARES.

Submitted October 16, 1917.   Decided October 23, 1917.

1.  BASTARDS—*Damages—Compromise.*

    In this state and in states with like or similar statutes the mother of a bastard child may compromise and settle with the reputed father her claim for damages against him.   (p. 162).

2.  SAME—*Proceedings—Compromise.*

    But to preclude her from instituting and prosecuting bastardy proceedings against her seducer such contract must be fair, free from fraud and deceit, and founded upon a good and sufficient consideration.   (p. 163).

3.  SAME—*Proceeding—Release—Consideration.*

    Upon the facts and circumstances shown in this case the consideration of twenty-five dollars for a complete release held not to constitute a sufficient consideration therefor, and that it was error to set aside the verdict of guilty found by the jury. (p. 163).

Error to Circuit Court, Randolph County.

Bastardy proceeding by Elsie Burr against Burl Phares. Verdict of guilty was set aside and a new trial awarded, and plaintiff brings error.

*Judgment reversed, and case remanded.*

*A. M. Cunningham* and *Neil Cunningham,* for plaintiff in error.

*James Coberly,* for defendant in error.

MILLER, JUDGE:

In a bastardy proceeding begun pursuant to chapter 80, of the Code, defendant pleaded not guilty, and also that before the commencement of said proceeding he had paid the plaintiff twenty five dollars and other considerations, which she accepted "in full satisfaction and discharge of said action."

On the trial plaintiff proved, and defendant did not deny, that he was the father of the bastard child.  So that the only

issue upon which the defendant relied was that raised by his plea of satisfaction and discharge for the consideration alleged.

To sustain this plea defendant introduced in evidence a paper writing, signed by the plaintiff, as follows:

"This Article of Agreement made and entered into this ......day of Aug. 3, 1916, by and between Elsie Burr, party of the first part, and Burl Phares, party of the second part.

"Whereas, the said Elsie Burr was on the 30th day of June, 1916, delivered of a child and of which said child the said party of the second part is the father.

"Witnesseth, That for and in consideration of the sum of $25.00, the said party of the first part does hereby release said party of the second part from an action in bastardy which she may have against him, and accepts the same as a full and complete compromise of her claims for damages or in bastardy, against him." Signed: "Elsie Burr."

He also swore that in addition to the money consideration expressed in the paper he agreed to give her money as she needed it. In another place he says: "I told her personally that I would give her money when she needed it, but it is not in the contract."

The facts and circumstances attending the obtaining of the paper writing were that: Being a resident of the state, and for fear of bastardy proceedings, defendant left and went to Cumberland, Maryland, where he received employment as a mechanic in railroad shops. In the meantime plaintiff wrote him letters, but received no replies. Finally being anxious to return to Elkins, West Virginia, his home and that of plaintiff, he sent his brother Thomas to see her and endeavor to get a settlement, providing him forty dollars to give her and offering more if necessary, to secure a settlement. She declined to treat with the brother, though he says she suggested that he have a contract prepared and perhaps she would and perhaps she would not sign it. She denies she suggested the paper, or promised to sign it, or had anything to do with having it prepared. Shortly afterwards, however, she wrote a letter to defendant referring to the recent visit of his brother, and in which she says he wanted her to sign a release and that she had declined, but requested him

to come to see her himself, that she would have nothing to do
with his brother or with anyone except himself toward a set-
tlement. She suggested marriage, etc., and it is plainly to be
seen she was anxious to get him to come back to her; she as-
sured him that she had no intention to cause his arrest and
that he was free to come home at any time.

A few days afterwards defendant returned, and went to
the home of plaintiff's father, a poor man without means,
was met by plaintiff's sister, and conducted into the house
where he was met by plaintiff with the child in her arms, and
where he succeeded in getting her to sign the paper. Her
statement is: "He asked me to sign the contract and he
asked me to let the baby down while I signed the contract,
and I signed the contract in consideration that he would do
what was right. I hadn't had the baby cart paid for and he
said to pay for the baby cart and do whatever I wanted to
with the rest of the money,— * * * * * * * I
thought it was a receipt showing him,—showing I would not
have the police arrest him at the station. He said, 'when-
ever you are away from home and know you can't come back,
it's pretty bad; take it on yourself, if you was that way'. He
never mentioned to me about coming to him for money." She
further says she thought it was a receipt so he could come
home, that she did not understand some of the words, as
"bastardy", and that if she had understood the character
of the paper and what was intended by it she never would
have signed it.

The evidence shows that she was alone, rather unsophisti-
cated, if not ignorant, and had not sought or obtained the
assistance of counsel or the advice of father, or friend, and
signed the paper under considerable excitement, due to the
circumstances, and the unexpected presence of the defendant.

On the trial the jury found defendant guilty and on mo-
tion of the defendant the trial court set aside the verdict and
awarded defendant a new trial, and plaintiff appeals.

The law here and in other jurisdictions with similar stat-
utes seems to be that though the primary object of the stat-
ute is to protect the public against the burden of supporting
and maintaining illegitimate children, yet it is so far in the

interests of the mother that she becomes the beneficiary and she alone can institute the proceedings. And all authorities agree that she may at least compromise her right, if not the county's, and settle her claims out of court, at least before suit brought. *Billingsley* v. *Clelland,* 41 W. Va. 234; *Bratt* v. *Cornwell,* 68 W. Va. 541; *Ingwaldson* v. *Skrivseth,* 7 N. D. 388; *Rohrheimer* v. *Winters,* 126 Pa. St. 253; *Hendrix* v. *The People,* 9 Ill. App. 42; *Spalding* v. *Fitch,* 1 Root (Conn.) 319; *Black Hawk County* v. *Cotter,* 32 Iowa 125; *Humphrey* v. *Kasson,* 26 Vt. 760; *Sherman* v. *Johnson,* 20 Vt. 567; *Burgen* v. *Straughan,* 30 Ky. 583; *Holmes* v. *The State,* 2 Greene (Iowa) 501; *Hays* v. *McFarlan,* (Ga.) 79 Am. Dec. 317; *Flint* v. *Pierce,* (N. Y.) 2 A. R. C. 463, and note; *Allison* v. *Bryan,* (Okla.) 17 Ann. Cas. 468.

While the principal point presented here, namely, the sufficiency of the consideration necessary to support such a contract, does not seem to have been directly involved or decided in any of the cases cited, yet fraud and deceit was involved in some of them. Nevertheless, the text writers and the cyclopaedias of the law have deduced from them the general rule that in order to preclude the mother of a bastard child from prosecuting such proceedings the contract must be grounded upon a good and sufficient consideration. 5 Cyc. 647; 3 R. C. L. p. 749, sec. 28. In *Black Hawk County* v. *Cotter, supra,* the holding was that "the mother of an illegitimate child may, by a fair settlement, founded upon a reasonable consideration with the putative father, preclude herself and the county from the right to maintain a proceeding under the provisions of the statute relating to bastardy to secure to her the maintenance of the child."

The law being for the protection of both the state and the mother can it be said that the contract relied on here was fair and founded on sufficient consideration to preclude plaintiff? Defendant was thirty five years of age; she was twenty two years of age; he admits that he promised more than he covered by the contract; she says he promised her he would do right. According to her evidence she thought she was signing a release for money paid; his purpose was to get a paper from her that would forever discharge him from any

further obligation to support and maintain his illegitimate child. That he practiced some deception upon her we think is clear. Admittedly the paper does not cover his entire contract, although he now pleads it in defense of the action. A just and fair consideration would be such sum as the court might justly impose upon him for the maintenance of the child until it arrives at the age of seven years. We judicially know that twenty five dollars, in these times at least, or at any time, would not go far in maintaining a child in the humblest manner. Our opinion is that the contract pleaded does not measure up to the requirements of the law and constitutes no bar to the present proceedings.

Our conclusion is to reverse the judgment, setting aside the verdict, and to reinstate the same, and to remand the case with direction to enter such judgment as will be fair and just taking into consideration the amount already paid plaintiff, and for such further action therein as the statute contemplates and requires.

*Judgment reversed, and case remanded.*