381 S.E.2d 269

**SHELBY J.S.**

v.

**GEORGE L.H.**

No. 18673.

Supreme Court of Appeals of West Virginia.

May 17, 1989.

Beth M. Suter, Child Advocate Office, Charleston, for appellant.

Timothy N. Barber, Charleston, for appellee.

MILLER, Justice:

In this appeal from the dismissal of a paternity action, two key issues are raised. The first is whether the dismissal of a prior paternity action bars Shelby J.S.,[1] the plaintiff below, from instituting a second paternity action against George L.H., the defendant below. The second issue is whether the ten-year statute of limitations under W.Va.Code, 48–7–4(a) (1983), precludes this action.

The facts in this appeal are fairly straightforward. The child was born on November 8, 1973. The mother instituted a paternity action on September 10, 1976, and then agreed to withdraw the suit by a signed statement dated July 10, 1977. The case was then dismissed by an agreed order dated July 21, 1977.

On May 9, 1985, the mother filed the present paternity suit to obtain child support. The defendant denied paternity and blood tests were ordered which showed a 99.88 percent probability of paternity. Subsequently, on April 3, 1987, the defendant filed a motion to dismiss and motion for judgment, raising as a bar the previously dismissed suit and the ten-year statute of limitations under W.Va.Code, 48–7–4(a) (1983). This case was dismissed on November 19, 1987.

**1.** We follow our traditional practice in domestic relations and other cases which involve sensitive facts and do not use the last names of the parties so as not to stigmatize them or their child. *See, e.g., Nancy Viola R. v. Randolph W.,* 177 W.Va. 710, 356 S.E.2d 464 (1987); *West Virginia Dep't of Human Serv. v. La Rea Ann C.L.,* 175 W.Va. 330, 332 S.E.2d 632 (1985).

**2.** In *Kathy L.B. v. Patrick J.B.,* 179 W.Va. 655, 657, 371 S.E.2d 583, 585 (1988), we pointed out that at common law a father owed no duty to support his child, but "[t]o correct this obvious inequity ... many states passed statutes to impose a duty of support upon the father." Some states have applied the civil rules to their paternity proceedings. *Robertson v. Apuzzo,* 170 Conn. 367, 365 A.2d 824 (1976); *Crayne v. M.K.R.L.,* 413 N.E.2d 311 (Ind.App.1980); *P.V. v.*

I.

The plaintiff argues that the West Virginia Rules of Civil Procedure, and particularly Rule 41(a), relating to voluntary dismissals, should apply to the action originally dismissed on July 21, 1977. The defendant disagrees, pointing out that at the time of the initial proceeding in 1976, we had characterized paternity suits as quasi-criminal in nature and, therefore, not subject to the Rules of Civil Procedure. *See State ex rel. Toryak v. Spagnuolo,* 170 W.Va. 234, 292 S.E.2d 654 (1982), *overruled on other grounds, Moore v. Goode,* 180 W.Va. 78, 375 S.E.2d 549 (1988); *State ex rel. Graves v. Daugherty,* 164 W.Va. 726, 266 S.E.2d 142 (1980). However, in these cases, we were concerned with according certain minimal due process rights to the defendants.

Independently of these arguments as to the nature of a paternity suit,[2] it is clear that most courts dealing with paternity statutes have construed them favorably toward the mother and her child with regard to a res judicata claim where there was no actual decision made on the merits in the prior proceeding. *See generally* 10 Am.Jur.2d *Bastards* § 94 (1963);[3] Annot., 37 A.L.R.2d 836, 840 (1954). One of the premises is a traditional one, that res judicata does not arise until there is a judgment on the merits, as we explained in Syllabus Point 6 of *Johnson v. Huntington Moving & Storage, Inc.,* 160 W.Va. 796, 239 S.E.2d 128 (1977):

*L.W.,* 93 N.M. 577, 603 P.2d 316 (1980); *Bell v. Martin,* 43 N.C.App. 134, 258 S.E.2d 403 (1979); *Tennessee Dep't of Human Serv. v. Vaughn,* 595 S.W.2d 62 (Tenn.1980). Certainly, since the 1983 (W.Va.Code, 48–7–1, *et seq.*) and 1986 (W.Va.Code, 48A–6–1, *et seq.*) amendments to our paternity statute, the proceeding now is civil.

**3.** In note 2 of *Moore v. Goode,* 180 W.Va. at 82, 375 S.E.2d at 553, we expressed some dismay at the continued utilization of the term "bastard," pointing out that most enlightened authorities now use the term "children born out of wedlock," referencing volume 6 of the Ninth Decennial Digest (Part 2), Table I, and *Matter of Legitimation of Locklear by Jones,* 314 N.C. 412, 334 S.E.2d 46 (1985).

"Before the principles of res judicata can be involved, there must have been an adjudication on the merits of a case." *See also Litten v. Peer,* 156 W.Va. 791, 197 S.E.2d 322 (1973); *Efthemes v. Crouch,* 138 W.Va. 50, 74 S.E.2d 508 (1953).

■ The second basis is the realization that the State has an interest in seeing that natural fathers support their children. As we explained in one of our earlier cases, *Burr v. Phares,* 81 W.Va. 160, 162, 94 S.E. 30, 31 (1917), "the primary object of the [paternity] statute is to protect the public against the burden of supporting and maintaining illegitimate children." As a result, courts tend to scrutinize carefully the mother's actions in a paternity suit in order that her child's support is not jeopardized.

A brief review of cases in other jurisdictions demonstrates the general approach. In *Smith v. Bott,* 169 Colo. 133, 454 P.2d 82 (1969), the court concluded that even though the dismissal of a mother's action in a prior case might be res judicata as to her, it did not foreclose the child's suit pursuant to a broader and more recently enacted statute. *See also Johnson v. Norman,* 66 Ohio St.2d 186, 20 O.O.3d 196, 421 N.E.2d 124 (1981). The Indiana court in *C.L.B. v. S.T.P.,* 167 Ind.App. 10, 337 N.E.2d 582 (1975), refused to apply res judicata where the original paternity suit had been dismissed pursuant to a plea bargain agreement. *See also Backora v. Balkin,* 14 Ariz.App. 569, 485 P.2d 292 (1971).

In *McDaniel v. Jackson,* 78 Mich.App. 218, 259 N.W.2d 563 (1977), the mother testified in the original suit that the defendant was not the father. Based on this testimony, the prosecutor dismissed the action. Yet the court held that the dismissal was "voluntary" and that a second suit was not barred. In a more analogous situation, courts have refused to accord res judicata to dismissal orders where they are not shown to have the character of a judgment on the merits or its legal effect. *E.g., W.R.S. v. E.R.,* 41 Colo.App. 414, 588 P.2d 379 (1978); *South Carolina Dep't of Social Serv. v. Foggie,* 271 S.C. 109, 245 S.E.2d 423 (1978); *Patrick v. Dickson,* 526 S.W.2d 449 (Tenn.1975).

In this case, we have an ex parte agreement by the mother to dismiss the original paternity suit and not to prosecute another one. No consideration is recited which might suggest that it was a compromise settlement. The order is equally vague, as it recites nothing as to the reasons for the agreed dismissal. Significantly, the dismissal was without prejudice.

Even if we were to assume that there had been some type of compromise settlement, there is nothing in the record to disclose its nature. We have always been cautious about permitting a mother to settle the child support claim with the natural father. Thus, in *Burr, supra,* we found the compromise agreement made by the mother to be inadequate and refused to bar her paternity suit, stating in Syllabus Point 2 that "to preclude her from instituting and prosecuting [paternity] proceedings against her seducer such contract must be fair, free from fraud and deceit, and founded upon a good and sufficient consideration."

In *Pope v. Kincaid,* 99 W.Va. 677, 129 S.E. 752 (1925), we also rejected a compromise agreement because it was based on inadequate consideration. Recently, in some jurisdictions, courts have came to the conclusion that the mother has no right to make a private compromise with the putative father which would contract away the child's support rights. *Gammon v. Cobb,* 335 So.2d 261 (Fla.1976); *Tuer v. Niedoliwka,* 92 Mich.App. 694, 285 N.W.2d 424 (1979); *Worthington v. Worthington,* 250 Ga. 730, 301 S.E.2d 44 (1983).

From the foregoing law, we conclude that the dismissal of the initial paternity suit does not bar the second suit instituted in 1985 and that the circuit court committed reversible error in dismissing it on that basis.

## II.

The defendant also claims that since the child was born on November 8, 1973, the present suit, filed in 1985, should be barred by the ten-year statute of limitations then set out for paternity actions in W.Va.Code,

48–7–4(a) (1983).[4] The defendant recognizes that in *Turner v. Jones,* 175 W.Va. 1, 330 S.E.2d 323 (1985), we avoided deciding whether the ten-year limitations period was unconstitutional under equal protection principles.

In *State ex rel. S.M.B. v. D.A.P.,* 168 W.Va. 455, 284 S.E.2d 912 (1981), , we found the three-year statute of limitations in W.Va.Code, 48–7–1 (1969), to be unconstitutional based on several United States Supreme Court cases which suggested that such a statute of limitations violated equal protection principles. Our view was confirmed in later Supreme Court opinions. *E.g., Clark v. Jeter,* 486 U.S. 456, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988); *Pickett v. Brown,* 462 U.S. 1, 103 S.Ct. 2199, 76 L.Ed.2d 372 (1983); *Mills v. Habluetzel,* 456 U.S. 91, 102 S.Ct. 1549, 71 L.Ed.2d 770 (1982).

In *Clark,* the Supreme Court struck down a Pennsylvania six-year statute of limitations for instituting paternity actions. The Supreme Court determined under equal protection principles that a statute which discriminates based on sex or illegitimacy "must be substantially related to an important governmental objective." 486 U.S. at 461, 108 S.Ct. at 1914, 100 L.Ed.2d at 471. The Supreme Court characterized this test as one of intermediate scrutiny which rests between the "rational basis review and the strict scrutiny" test. 486 U.S. at 461, 108 S.Ct. at 1914, 100 L.Ed.2d at 471. We have followed these latter tests in our equal protection cases. *E.g., State ex rel. Longanacre v. Crabtree,* 177 W.Va. 132, 350 S.E.2d 760 (1986); *Shackleford v. Catlett,* 161 W.Va. 568, 244 S.E.2d 327 (1978); *State ex rel. Piccirillo v. City of Follansbee,* 160 W.Va. 329, 233 S.E.2d 419 (1977).

■ In *Longanacre,* we acknowledged that "[i]n considering our own equal protec-

tion principles under Article VI, Section 39 of the West Virginia Constitution, we have obtained guidance from federal cases interpreting the equal protection mandate of the Fourteenth Amendment to the United States Constitution which is applicable to state actions." 177 W.Va. at 135–36, 350 S.E.2d at 765. (Citations omitted). We deem it appropriate to utilize the intermediate test in illegitimacy cases for equal protection purposes under Article VI, Section 39 of our Constitution. This test requires that the questioned legislation must be substantially related to an important governmental objective.

The Court in *Clark* explained it had developed a more discreet test in *Mills* for determining challenges to a paternity statute of limitations. First, the period " 'must be sufficiently long to present a reasonable opportunity . . . to assert claims. . . . Second, any time limitation . . . must be substantially related to the State's interest in avoiding the litigation of stale or fraudulent claims.' *Mills v. Habluetzel,* 456 U.S. 91, 99–100 [71 L.Ed.2d at 777–78, 102 S.Ct. at 1555]." 486 U.S. at 462, 108 S.Ct. at 1914, 100 L.Ed.2d at 472.

■ The Court observed that the primary purpose of a statute of limitations was to cut off stale or fraudulent claims which may be hard to rebut after a long period of time has lapsed. It noted, however, that in paternity suits "scientific advances in blood testing had alleviated some problems of proof." 486 U.S. at 465, 108 S.Ct. at 1916, 100 L.Ed.2d at 474. The Supreme Court also pointed out that there were Pennsylvania statutes which gave longer periods of time in analogous situations, one of which was the time to bring civil actions where the person is under a disability such as infancy, in which case the period is extended until after he reaches majority. *Cf.* W.Va.Code, 55–2–12. The

4. The applicable portion of W.Va.Code, 48–7–4(a) (1983), is: "Such action shall be instituted in the circuit court of the county wherein the mother, the child or the defendant resides and shall be commenced within ten years of the birth of the child."

In 1986, the paternity statute was amended to permit a suit to be brought on behalf of the

child "prior to such child's eighteenth birthday." W.Va.Code, 48A–6–2 (1986). This statute also enables an action to be brought " [b]y such child in his own right at any time after the child's eighteenth birthday but prior to the child's twenty-first birthday." W.Va.Code, 48A–6–1(6) (1986).

Supreme Court indicated that these more lengthy statutes of limitations serve to undercut the staleness argument. Finally, it noted that Pennsylvania had recently enacted an eighteen-year period of limitations, although acknowledging that perhaps this was done under threat of losing federal funds. *See Child Support Enforcement Amendments of 1984,* 42 U.S.C. § 666(a)(5) (1986 Ed.Supp.IV).

We believe many of these same reasons apply to the preexisting ten-year statute of limitations period found in W.Va.Code, 48–7–4(a) (1983). We, therefore, conclude that the provisions of W.Va.Code, 48–7–4(a) (1983), providing for a ten-year statute of limitations, violate the equal protection provisions of the Constitution of the United States and the Constitution of the State of West Virginia and are, therefore, unenforceable.

As we have earlier stated in note 4, *supra,* the time period for bringing a paternity action is now "prior to such child's eighteenth birthday." W.Va.Code, 48A–6–2 (1986). Furthermore, under W.Va.Code, 48A–6–2(b), this more favorable period of limitations applies retroactively.[5] Thus, our holding today applies only to that narrow band of cases, like the present one, that were instituted under the ten-year provision of W.Va.Code, 48–7–4(a) (1983), and dismissed without a decision on the merits by virtue of the ten-year limitations period.

For the foregoing reasons, we reverse the judgment of the Circuit Court of Kanawha County and remand the case for further proceedings.

Reversed and Remanded.

---

**5.** W.Va.Code, 48A–6–2(b), provides:

"An action to establish paternity under the provisions of this article may be brought by or on behalf of a child notwithstanding the fact that, prior to the effective date [July 1, 1986] of this section, an action to establish paternity may have been barred by a prior statute of limitations set forth in this Code or otherwise provided for by law."