IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2021 Term

_____

No. 20-0020
_____

FILED
**June 2, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

COREY D.,
Petitioner

v.

TRAVIS R., MICHELLE H., and THE WEST VIRGINIA
BUREAU FOR CHILD SUPPORT ENFORCEMENT,
Respondents

_____

Appeal from the Circuit Court of Upshur County
The Honorable Kurt W. Hall, Judge
Family Court Case Nos. 11-D-132; 18-D-103; and 18-D-128

VACATED AND REMANDED
WITH DIRECTIONS
_____

Submitted:  May 4, 2021
Filed:  June 2, 2021

Sandra K. Bullman, Esq.
Bullman and Bullman
Charleston, West Virginia
Counsel for the Petitioner Corey D.

Heidi Talmage, Esq.
General Counsel
Mark L. French, Esq.

Shannon R. Thomas, Esq.
Weston, West Virginia
Counsel for the Respondent Travis R.

Cheryl E. LaNasa, Esq.
Buckhannon, West Virginia
Guardian ad Litem for D.H.

Assistant General Counsel
Charleston, West Virginia
Counsel for the Respondent
      West Virginia Bureau for
      Child Support Enforcement

Shawn D. Bayliss, Esq.
Bayliss Law Offices
Hurricane, West Virginia
Counsel for the Respondent Michelle H.

JUSTICE WOOTON delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1.     "In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*." Syllabus, *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004).

2.     In accordance with the provisions of West Virginia Code § 48-24-103 (2015), undisputed blood or tissue test results that show a statistical probability of paternity of more than ninety-eight percent are conclusive on the issue of paternity, and the court shall enter an order legally establishing the man as the father of the child.

**WOOTON, Justice:**

In this paternity case, the petitioner, Corey D., [1] appeals from the December 13, 2019, order entered by the Circuit Court of Upshur County, West Virginia. The circuit court affirmed the family court's August 30, 2019, determination that the respondent Travis R. is the legal father of D.H. (also referred to as "the child"), the minor child at issue herein.[2] In reaching this decision, the circuit court upheld the family court's refusal to admit DNA test results that demonstrated that the petitioner is the child's biological father.[3] The petitioner argues that the circuit court erred in upholding the family court's determination that the respondent Travis R., not the petitioner, is the legal parent of the minor child, and in permitting the family court to conduct both a de facto adoption and de

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R., II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2] In affirming the family court's decision, the circuit court refused the appeals of both the petitioner and the respondent West Virginia Bureau for Child Support Enforcement ("BCSE").

[3] In reaching this decision, the lower courts relied upon this Court's prior decision in *Michael K.T. v. Tina L.T.*, 182 W. Va. 399, 387 S.E.2d 866 (1989). For reasons discussed *infra* in greater detail, the courts' reliance on *Michael K.T.* for disallowing the DNA test results was misguided and in error.

facto termination of parental rights.[4]  Upon review of the parties' briefs[5] and oral

arguments, the appendix record, and all other matters submitted before this Court, we find

that the circuit court erred in its decision to uphold the family court's paternity

determination.  We therefore vacate the decisions of both the family court and the circuit

court, and remand the case to the circuit court for further proceedings consistent with this

opinion.

## I.  Facts and Procedural Background

As a backdrop to the case before us, the respondent Michelle H. and Travis

R. were involved in a long-term, on-again/off-again relationship, but never married.

During one of their separations in 2011, Michelle became pregnant, and in August of 2012

D.H. was born.  No father was listed on the child's birth certificate. The parties reconciled

but permanently separated in July of 2018.  Michelle and Travis have four other children

together who are not involved in this appeal.

---

[4] The petitioner's first two assignment of errors are largely redundant and we have consolidated them into a single issue for purposes of this appeal.

[5] Corey D. was a self-represented litigant below and timely filed his petition for appeal with this Court.  By order entered on February 4, 2021, the Court appointed counsel for both the petitioner and Michelle H.  All the parties were directed to file amended briefs and an appendix with the Court.  Because of the amended briefs filed in this case and the overlap of issues between the original briefs and the amended briefs, we are guided in our resolution of this case by the parties' amended briefs.

As a result of the relationship between Michelle and Travis, three separate actions have been filed.[6] The first case, Upshur County Case No. 11-D-132, involves a petition for support and/or custodial allocation filed by the respondent Michelle H. against the respondent Travis R. in 2011 when the parties were separated, which resulted in the original custodial allocation and child support determinations between these two parents and their then-three children.[7]

The second case, Upshur County Case No. 18-D-103, was filed by the respondent Travis R. on July 6, 2018, after the parties permanently separated. He sought to be adjudicated as the psychological parent of the child at issue herein, rather than as the child's legal father.

The third case, Upshur County Case No. 18-D-128, which is the case that is the subject of this appeal ("the paternity action"), was filed by the respondent BCSE on August 16, 2018. In this case, the BCSE sought to have the petitioner adjudicated as the child's biological father in order to obtain an order setting child support. The BCSE filed the action in response to the respondent Michelle H.'s completion of an application for services with BCSE naming the petitioner as the child's biological father. DNA testing of

---

[6] By order entered on March 20, 2019, the family court ordered the three actions be consolidated.

[7] The couple had a fourth child together after they reconciled, and after the birth of D.H. in 2012.

3

the petitioner, the respondent Michelle H., and the child resulting from the filing of this action showed that there is a 99.99% probability that the petitioner is the biological father of the child.

The family court conducted a hearing on the paternity issue on August 7, 2019, in which the petitioner appeared as a self-represented litigant. During this hearing the petitioner testified in response to questioning by the family court that he knew at the time Michelle H. was pregnant that the child was or could have been his. He stated that when the child was around three months old the respondent Michelle H. asked him to sign an affidavit stating that he was the child's father, but he never signed that document. However, he stated that he had always wanted to be recognized and act as the child's father. According to the petitioner, "the situation and the behavior of one of the parties involved made me afraid to be involved in this situation."[8] He testified that he could have gone to court to ask for testing and to be declared the child's father, but he did not do that.

By order entered September 3, 2019, the family court found:

14. Because . . . [the petitioner] refused to submit to the drug testing, the Court inferred that he was positive for all substances.[9]

---

[8] The petitioner did not identify which party made him afraid to get involved.

[9] During the petitioner's testimony, the family court recessed the proceeding, and ordered the petitioner, as well as the respondents, Travis R. and Michelle H., to submit to drug testing. The petitioner refused. When the proceeding resumed the family court

4

15.     The Guardian Ad Litem recommends that it is not in the child's best interest to have . . . [the petitioner] adjudicated as the child's father.[10]

inquired of the petitioner as to whether he was high on drugs.  The petitioner responded that he was not; he was just nervous.  The family court stated:

> Okay.  I've been around for a while.  You know the expression, don't BS a BS'er?
>
> Okay.  Well don't do that to me.  I'm not stupid.  I don't appreciate being treated as such.
>
> So when you refuse to take a drug screen, I assume you're positive for all substances. . . .
>
> So right now I'm considering you're positive for every drug on this panel, okay?  So that's your choice you've made.  And that's fine.  Based on that, if you want to be adjudicated . . . [the child's] father, then I will refer it to CPS and ask that all your rights be terminated based on abuse and neglect proceedings so.  I mean, because I don't think you're worth being a father to anybody.  You hadn't been involved in his life for seven years though you claim you knew that he was your child for the last seven years.  You didn't reach out to him for seven years.  [The respondent Michelle H.]. . . didn't reach out to you until she knew it would be irritating to . . . [the respondent Travis R.] because he was trying to claim that he was the . . . [child's father], and get his name put on the birth certificate and BCSE opened the case. . . .

It is unclear what legal authority the family court relied upon in directing the petitioner to take a drug test; it is equally unclear what legal basis the family court had for making a finding of fact regarding the petitioner's refusal to submit to a drug test to support its refusal to adjudicate the petitioner as the child's legal father for purposes of entering a child support order in this matter. This Court's review of the statutes and case law relevant to the facts of this case – a paternity proceeding whose sole purpose is to establish an order of child support – has unearthed no legal authority to test the alleged father for drugs; whether an alleged father has drugs in his system is not relevant to a determination of whether he is the legal father of a child.

[10] In the Report of Guardian ad Litem, dated August 5, 2019, there is one paragraph in the twenty-three-page report documenting the failed attempts to reach the petitioner as part of the guardian ad litem's investigation, as well as the listing of a couple of

16. [The respondent Travis R.]. . . moved the Court to not only consider him a psychological father to the child but to adjudicate him as the child's legal father.

17. The Court considered the Guardian Ad Litem's report, testimony of the parties, and . . . [the respondent Travis R.'s] seven (7) year relationship with the child.

18. In the spirit of *Michael KT*, the Court finds that . . . [the respondent Travis R.] should be adjudicated as the father of [the child]. . . .

19. The birth certificate of [the child] . . . should be amended to add . . . [the respondent Travis R.] as the child's natural father.

20. [The respondent Michelle H. and the respondent Travis R.] . . . agree that they were previously residing together and separated in June, 2018. Therefore, there should be no child support arrearages through June 30, 2018.

(Footnotes added).

The petitioner and the respondent BCSE both appealed the family court's order to the circuit court. The circuit court, by ordered entered December 13, 2019, refused the appeal. The circuit court found that the family court did not abuse its discretion when it refused to consider the paternity test evidence, and that the family court correctly adjudicated the respondent Travis R. as the child's father. The instant appeal followed.

---

misdemeanors that involved the petitioner. The guardian ad litem recommended that "absent further Court order, Mother be prohibited from permitting . . . [the petitioner] to have contact with the Minor Children[.]" However, there was no evidence introduced in the paternity action, other than the petitioner's testimony, regarding the child's best interest.

## II.  Standard of Review

Our review of this matter is guided by the following standard of review:

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

Syllabus, *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004).

## III.  Discussion

The overarching issue in this case involves the determination of a child's paternity for purposes of securing a child support order.  The petitioner argues that the lower courts erred in determining that the respondent Travis R. is the legal father of the child.  The petitioner contends the courts' refusal to consider the DNA testing results, which established a 99.99% probability that he was the child's father, violates West Virginia Code § 48-24-103 (2015) concerning medical testing procedures to aid in paternity determination.[11]  Conversely, the respondent Travis R., supported by the guardian ad litem, contends that he was properly determined to be the child's legal parent.  He argues that it was proper for the lower courts to disregard the paternity tests results of a man who "failed to come forward."  Further, both the respondent Travis R. and the guardian ad litem

---

[11] The respondent BCSE and the respondent Michelle H. also argue that the petitioner should have been declared the child's legal father, and the BCSE further argues that the petitioner should have been ordered to pay child support.

state that it was in the child's best interests for the court to find that he was the child's father as he is the only father the child knows.

West Virginia law allows paternity to be established in three ways. First, if a child is born during a marriage, there is a presumption that the husband is the child's father and the husband's name "shall" be entered on the child's birth certificate. S*ee* W. Va. Code § 16-5-10(f)(2016) ("If the mother was married at the time of either conception or birth, or between conception and birth, the name of the most recent husband shall be entered on the certificate as the father of the child . . . ."). Second, if the mother is not married at the time of either conception or birth of a child, or between the child's conception and birth, the mother and putative father may sign an affidavit stating that he is the child's father, which then allows the father's name to be placed on the child's birth certificate. S*ee* W. Va. Code §§ 16-5-10(g) and (h) ("If the mother was not married at the time of either conception or birth, or between conception and birth, the name of the father shall not be entered on the certificate of birth without an affidavit of paternity signed by the mother and the person to be named as the father. The affidavit may be joint or individual and each signature shall be individually notarized. . . . A notarized affidavit of paternity, signed by the mother and the man to be named as the father, acknowledging that the man is the father of the child, legally establishes the man as the father of the child for all purposes, and child support may be established pursuant to the provisions of chapter forty-eight of this code."). Third, if a paternity action is filed pursuant to West Virginia Code § 48-24-101 to -106 (2015), and the child's paternity is determined by a court, the

8

father's name "shall" be entered on the child's birth certificate.  *See* W. Va. Code § 16-5-10(i).

The instant matter falls within the purview of West Virginia Code § 48-24-101 to -106–the third option mentioned above.  Significantly, this Court has stated that this type of paternity proceeding is

> in the State's interest to see that natural fathers, and not taxpayers, support their children. "The primary object of the [paternity] statute is to protect the public against the burden of supporting and maintaining illegitimate children." *Shelby J.S. v. George L.H.*, 181 W.Va. 154, 156, 381 S.E.2d 269, 271 (1989), quoting *Burr v. Phares*, 81 W.Va. 160, 162, 94 S.E. 30, 31 (1917).

*Mildred L.M. v. John O.F.*, 192 W. Va. 345, 349, 452 S.E.2d 436, 440 (1994).

Specifically, West Virginia Code § 48-24-101(a) allows the BCSE to bring "[a] civil action to establish the paternity of a child and to obtain an order of support for the child . . . in the family court[,]" by filing a verified complaint.  This type of action is a "summary proceeding" and falls within the "domestic relations jurisdiction of the courts[.]" *Id*. § 48-24-101(b).  Under West Virginia Code § 48-24-103, the BCSE, prior to commencing a paternity action, "may order the mother, her child and the man to submit to genetic tests to aid in proving or disproving paternity."[12]  Finally, if the respondent admits

---

[12] There are two orders entered by the family court directing that genetic paternity testing be performed.  The first was entered on March 8, 2019, and the second on March 20, 2019,

9

"by verified responsive pleading" that he is the child's father and owes a duty to pay child support, "or if after a hearing on the merits, the court shall find, by clear and convincing evidence that the man is the father of the child, the court *shall*," enter an order of support according to the statute and support guidelines. *Id*. § 48-24-104(a) (emphasis added).

At issue in this case is the language of West Virginia Code § 48-24-103(a)(3). That statute provides that *"[u]ndisputed* blood or tissue test results which show a statistical probability of paternity of *more than ninety-eight percent shall*, when filed, *legally establish the man as the father of the child* for all purposes and child support may be established pursuant to the provisions of this chapter." (Emphasis added). Under the former version of the statute, which was repealed in 2001 and reenacted as set forth *supra* with virtually identical language, this Court held that: "Under W. Va. Code, 48A-6-3 (1992), *undisputed blood or tissue test results indicating a statistical probability of paternity of more than ninety-eight percent* are *conclusive on the issue of paternity*, and the circuit court should enter judgment accordingly." *Mildred L.M.*, 192 W. Va. at 348-49, 452 S.E.2d at 438-39, Syl. Pt. 5 (emphasis added); *see In re Clifford K.*, 217 W. Va. 625, 636, 619 S.E.2d 138, 149 (2005) ("the Legislature has determined that, in paternity proceedings, a man may automatically be declared to be a child's legal father in certain circumstances. Where there exists scientific certainty that a man is the subject child's biological father, he is denominated as such: 'Undisputed blood or tissue test results which show a statistical probability of paternity of more than ninety-eight percent shall, when filed, *legally establish* the man as the father of the child for all purposes and child support

10

may be established pursuant to the provisions of this chapter.' W. Va. Code § 48-24-103(a)(3) (2002) (Repl. Vol. 2004) (emphasis added)."). Based on the foregoing, we hold that in accordance with the provisions of West Virginia Code § 48-24-103 (2015), undisputed blood or tissue test results that show a statistical probability of paternity of more than ninety-eight percent are conclusive on the issue of paternity, and the court shall enter an order legally establishing the man as the father of the child.

Based upon the undisputed DNA test results in this case, the family court found that "[o]n the 24th day of May, 2019, paternity test results for . . . [the child] were filed which show a statistical probability of paternity of 99.99% for . . . [the petitioner/father]." The family court further found that "[n]o written protest to the results was filed within thirty (30) days of the filing of the genetic test results." However, rather than applying the statutory mandate set forth in West Virginia Code § 48-24-103(a)(3), and declaring that the DNA tests "*legally establish*" the petitioner as the child's father, both the family court and the circuit court expressly refused to give any weight to the DNA test results in direct contravention of West Virginia Code § 48-24-103(a)(3) (emphasis added).

With no discussion of any of the aforementioned statutes, the lower courts turned to this Court's decision in *Michael K.T.*, a case inapposite to the facts in this case, to support their decision to disregard the paternity test results. At issue in *Michael K.T.* was the question of whether blood test evidence was admissible for the purpose of rebutting the presumption of legitimacy for the child when the child was conceived and born during

11

a marriage. 182 W. Va. at 400-01, 387 S.E.2d at 867. The husband, who was the child's putative father, filed for divorce alleging grounds that included adultery. He specifically sought a determination from the court that the child was not his and that "no children had issued as a result of the marriage." *Id*. at 401, 387 S.E.2d at 868. He claimed that the child was conceived by the wife at a time when he was on military maneuvers in Germany. Blood test evidence that was offered during the course of the divorce proceeding conclusively showed that he could not be the child's father. *Id*. Despite this evidence, the circuit court granted the divorce but found that the child was the "legitimate child" of the husband and ordered that he pay child support and maintenance. *Id*.

On appeal, this Court found that the presumption of legitimacy that arises when a child is conceived or born during a marriage is rebuttable. *Id*. at 400, 387 S.E.2d at 867, Syl. Pt. 1. The Court also held:

> When a putative father seeks to use blood test results to *disprove* his paternity and rebut the presumption of legitimacy which has attached to a child born of a valid marriage, an *in camera* hearing should be held in order for the circuit court to make a preliminary determination whether the equities surrounding the particular facts and circumstances of the case warrant admission of blood test results.

*Id*., Syl. Pt. 2 (some emphasis added). In this regard, and specific to the instant case, the Court held in syllabus point three that "[a] trial judge should *refuse to admit blood test evidence* which would *disprove paternity* when the individual attempting to *disestablish* paternity has held himself out to be the father of the child for a sufficient period of time

12

such that *disproof of paternity* would result in undeniable harm to the child." *Id*. at 400, 387 S.E.2d at 867 (emphasis added).

*Michael K.T.* is readily distinguishable from the facts in the instant case. This case does not involve either a child conceived or born during a marriage, or an alleged father seeking to *disprove* paternity.[13]  Instead, the respondent BSCE is trying to *establish* paternity for a child who has no legal father and was not born during any marriage. Because of the undeniable factual differences between *Michael K.T.* and this case, the lower courts' reliance upon *Michael K.T.* was wholly misguided. The courts' failure to apply the statutory directive of West Virginia Code § 48-24-103(a)(3), declaring the petitioner to be the legal father of the child based upon the DNA test results was clear error.

To that end, this case is resolved by a straightforward application of the paternity proceeding statutory scheme. *See* West Virginia Code § 48-24-101 to -106.  The lower courts erred in refusing to apply West Virginia Code § 48-24-103(a)(3) as previously

---

[13] Equally inapplicable to the ultimate resolution of this case are this Court's decisions in *State ex rel. Roy Allen S. v. Stone*, 196 W. Va. 624, 474 S.E.2d 554 (1996), and *Michael N. v. Brandy M.*, 243 W. Va. 415, 844 S.E.2d 450 (2020).  Like *Michael K.T.*, both of these cases involve children born during a marriage.  However, in both *Roy Allen S.* and *Michael N.*, the putative biological father sought to establish paternity for purposes of seeking a custodial allocation.  Again, none of these facts exist in the current case.

13

discussed, in failing to declare the petitioner as the child's legal father,[14] and in failing to

enter a child support order in accordance with the statute. *See* W. Va. Code § 48-24-104

---

[14] Part of the problem, as gleaned from the proceedings below, stemmed from both the family court's and the circuit court's misapprehension of the relief afforded by declaring the petitioner the child's legal father. The only relief that such a declaration warranted in the paternity action was the establishment of a duty of support. *See* W. Va. Code § 48-24-104. However, the lower courts unnecessarily interjected the issue of custody into the proceeding. It appears that custody and visitation between the respondent Michelle H. and the respondent Travis R. are governed by a court order stemming from the first action filed between these two parties – Upshur County Case No. 11-D-132 – which concerned child support and custodial allocation. To the extent that the petitioner wants to have any role in the child's life, he would have to file an appropriate action with the lower court. *See generally* W. Va. Code §§ 48-9-101 to -604 (2015 & Supp. 2020) (pertaining to allocation of custodial responsibility and decision-making responsibility of children).

To further complicate matters, we note that the respondent Travis R., in his brief submitted to this Court, stated:

> Although not relevant to the instant appeal, after entry of this order, psychological evaluations were completed resulting in findings of abuse and neglect by Mother. The child was ultimately placed in the custody of Travis R. as a result. Michelle H. committed domestic violence against one of the other children by hitting him with her fist in the eye. All children, including D.H.[,] were placed with Travis R. where they remain at this time. Michelle H. has supervised visitation with all of the children. Corey D. has had no interaction with any of the children.

However, none of this information is supported by the appendix record. We also have no information on the current status of the purported abuse and neglect proceeding. Consequently, to the extent that the child is currently in the care and custody of the respondent Travis R. due to an abuse and neglect proceeding, any decision on custody, decision-making allocations, visitation, and child support regarding this child is within the sole jurisdiction of the circuit court. *See* Syl. Pts. 3, 4 and 5, *In re T.M.*, 242 W. Va. 268, 835 S.E.2d 132 (2019) (holding that unless an abuse and neglect petition is dismissed, "the circuit court retains jurisdiction to oversee the custodial placement of children subject to abuse and neglect proceedings" and is required to make any custodial determinations,

(providing for the entry of an order of support "in accordance with the support guidelines set forth in article 13-101, et seq., and the payment of incurred expenses as provided in subsection (e) of this section.").

The lower courts' refusal to apply the paternity statutory scheme resulted in the comingling of several different proceedings into a legal entanglement that must be corrected, for two reasons. First, to the extent that the family court declared that the respondent Travis R. was the child's legal father and directed that his name be placed on the child's birth certificate, the result was a de facto adoption; the evidence before the court in the paternity action unequivocally demonstrated that the respondent Travis R. was *not* the child's legal father. Consequently, the family court allowed the respondent Travis R. to essentially adopt the child without following any of the requisite statutory framework for such an event to occur. *See* West Virginia Code § 48-22-101 to -903 (2015 & Supp. 2020) (setting forth framework governing adoptions). Further, the de facto adoption that occurred effectively resulted in a termination of the petitioner's parental rights because, as part of the adoption proceedings, a court must determine that "no person retains parental rights in such child" other than "the petitioner [referring to the adoptive parent] and the petitioner's spouse, or the joint petitioners[.]" *Id*. § 48-22-701(a)(1). According to the DNA test results in the paternity proceeding, *see* West Virginia Code § 48-24-103(a)(3), the petitioner was the father of the child and his rights had to be addressed by a court before

decision-making allocations, visitation determinations, and support determinations – not the family court).

15

a legal adoption could occur. *See id*.; *see also* W. Va. Code § 48-22-301 (concerning consent or relinquishment of parental rights and abandonment); W. Va. Code § 48-22-306 (pertaining to conduct presumptively constituting abandonment); W. Va. Code § 49-4-114 (2015) (relating to the filing of a petition to terminate parental rights); W. Va. Code § 49-4-601 (Supp. 2020) (concerning filing a petition when child is abused or neglected). Consequently, both the family court and the circuit court created a unique tangle of error, effecting both a de facto adoption by the respondent Travis R. and a termination of the petitioner's parental rights without affording all the affected parties, including the petitioner, the statutory notices and procedural safeguards required as part of both adoption and abuse and neglect proceedings.

Second, to the extent that both a de facto adoption and termination of parental rights occurred in family court, the family court was acting beyond its jurisdiction. Jurisdiction for both adoption and abuse and neglect proceedings lies in the circuit court, not the family court. *See* W. Va. Code § 48-22-201 (providing that persons who seek to adopt may petition a "circuit court of the county wherein such person or persons reside for a decree of adoption of any minor child or person who may be adopted by the petitioner or petitioners. . . . "); W. Va. Code § 49-4-601(a) (providing that a petition asserting allegations of abuse and neglect be filed in "the circuit court in the county in which the child resides, or if the petition is being brought by the department, in the county in which the custodial respondent or other named party abuser resides, or in which the abuse or neglect occurred . . . ."). Under the specific facts of this case, in which the family court

16

lacked jurisdiction to declare the respondent Travis R. to be the child's legal father, we agree with the respondent BCSE's argument that the lower court's order is "void or voidable" and "does not provide. . . [the child] with a true establishment of legal paternity." As we recently stated in *In re Guardianship of K.W.*, 240 W. Va. 501, 813 S.E.2d 154 (2018), "[w]ithout question, subject-matter jurisdiction 'must exist as a matter of law for the court to act.' Consequently, 'any decree made by a court lacking [subject-matter] jurisdiction is void[.]'" *Id.* at 510, 813 S.E.2d at 163 (footnotes omitted) (quoting *State ex rel. Smith v. Thornsbury*, 214 W. Va. 228, 233, 588 S.E.2d 217, 222 (2003), and *State ex rel. TermNet Merchant Servs., Inc. v. Jordan*, 217 W. Va. 696, 700, 619 S.E.2d 209, 213 (2005)).

Finally, two ancillary matters arise from the Court's decision herein. First, as a result of the lower court's determination that the respondent Travis R. is the child's legal father, the issue of whether he may qualify as the child's psychological parent was left unresolved. *See* Syl. Pt. 3, in part, *In re Clifford K.*, 217 W. Va. 625, 619 S.E.2d 138 (2005) ("A psychological parent is a person who, on a continuing day-to-day basis, through interaction, companionship, interplay, and mutuality, fulfills a child's psychological and physical needs for a parent and provides for the child's emotional and financial support. The psychological parent may be a biological, adoptive, or foster parent, or any other person. The resulting relationship between the psychological parent and the child must be of substantial, not temporary, duration and must have begun with the consent and encouragement of the child's legal parent or guardian."). Upon remand, the circuit court

17

should decide, upon relevant evidence presented in a hearing, whether Travis R. is the child's psychological parent and, if so, what effect that determination has in the case. *See infra* note 15.

Second, any custody or visitation decision regarding the child must be guided by a determination of the child's best interest. *See infra* note 15. As this Court stated in *Roy Allen S.*, "[a] finding of paternity would only entitle the natural father to an opportunity to request to invoke his parental rights; in response, it would remain for the circuit court to determine issues of visitation, custody, etc., based on the best interests of the child." *Id*. at 636, 474 S.E.2d at 567. Indeed, "'[i]n a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided.' Syl. pt. 1, *State ex rel. Cash v. Lively*, 155 W.Va. 801, 187 S.E.2d 601 (1972)." Syl. Pt. 4, *State ex rel. David Allen B. v. Sommerville*, 194 W.Va. 86, 459 S.E.2d 363 (1995).

## IV. Conclusion

For the foregoing reasons, the orders of both the circuit court and the family court regarding the paternity of the child are vacated; this case is remanded to the circuit court to enter an order establishing both the petitioner's legal paternity, as set forth herein, and an order of child support.[15] Additionally, the circuit court should conduct any further

---

[15] We recognize that jurisdiction in this consolidated case originated with the family court and that the family court has jurisdiction over the paternity action. However, because of the possible existence of a pending abuse and neglect action in the circuit court involving

18

proceedings necessary to resolve whether the respondent Travis R. is a psychological

parent of the child.

Vacated and remanded with directions.

the child, D.H., we remand the case to the circuit court for entry of orders and proceedings consistent with this opinion, including a determination of whether any issues herein are within the jurisdiction of the family court.

19