588 S.E.2d 217

STATE of West Virginia ex rel. Robert SMITH, Commissioner, West Virginia Bureau of Employment Programs, and the West Virginia Bureau of Employment Programs, Workers' Compensation Division, Petitioners,

v.

Honorable Michael THORNSBURY, Judge of the Circuit Court of Mingo County, and S.E.T. Personnel Services Unlimited, Inc., Respondents.

No. 31434.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 24, 2003.

Decided Oct. 10, 2003.

Brian D. Morrison, Schumacher, Francis & Nelson, Charleston, for the Petitioners.

Mark A. Ferguson, Sprouse & Ferguson, P.L.L.C., Charleston, Cecil C. Varney, Varney Law Office, Williamson, for the Respondent, S.E.T. Personnel Services Unlimited, Inc.

PER CURIAM.

In this original proceeding in prohibition, the petitioners/defendants below, Robert Smith, Commissioner of the West Virginia Bureau of Employment Programs, and the Workers' Compensation Division of the Bureau[1] (hereinafter generally referred to as "Relators"), were awarded a rule against the Honorable Michael Thornsbury, Judge of the Circuit Court of Mingo County, and plaintiff below, S.E.T. Personnel Services Unlimited, Inc. (hereinafter SET), to show cause why they should not be prohibited from enforcing a temporary restraining order issued by the lower court through its order of March 26, 2003. The injunctive relief granted by the lower court included barring Relators from withdrawing certification of workers' compensation coverage of SET for delinquent payment of workers' compensation premiums and essentially lowering SET's workers' compensation premium rate for its current employees during the resolution of an underlying monetary damage claim. We have concluded, after full consideration of the filed documents and relevant law, that Relators are entitled to the relief sought.

## I.  Background and Procedural History

We initially relate some preliminary information to further understanding of the basis of SET's suit filed in the lower court. SET apparently operated for many years as a diversified employment agency and paid workers' compensation premiums at the rate of $6.35 per hundred dollars for its employees who worked in various job categories,

---

1. While the Division of Workers' Compensation was recently moved from the Bureau of Employment Programs and established as a stand-alone commission named the Workers' Compensation Commission, at all times relevant to this case the agency was known as the Division of Workers' Compensation.

including mining.[2] In the early part of 2002, new owners acquired SET. SET contends that the new owners met with Commissioner Smith[3] prior to expanding its employment services to include underground coal mining and received assurances that it would continue to be classified as a diversified employment agency as long as it did not employ surface miners. Relators assert that the Division of Workers' Compensation (hereinafter "Division") first received notice in late September or early October 2002 of SET's intention to begin a new business venture which involved retaining employees for use by area coal mines as underground coal miners. The Division maintains that SET's reclassification was based upon this information in order to account for the greater injury risk associated with deep underground coal mining. The reclassification resulted in SET's workers' compensation premium rates increasing to $28.96 per hundred dollars. SET timely requested reconsideration of the increase in premium, and the Division timely issued its final order on January 30, 2003.[4] Although SET continued to remit premium payments after receipt of the reclassification notice, payments were made at the lower rate of $6.35 per hundred.

SET claims that it instituted the underlying suit for money damages and injunctive relief in the Mingo County Circuit Court on January 24, 2003, because it had received no response or relief from the Division. The complaint alleges that by not adhering to the representations made at the June 18, 2002, meeting, and by increasing the workers' compensation premium rates of SET for its underground mining venture, Relators committed acts of negligence, fraudulent misrepresentation, unfair dealings and practices, violations of due process and the tort of outrage and thus bear the responsibility for money damages SET has suffered from its inability to solicit new business as well as from lost business and future profits. The complaint also included a request for injunctive relief in order "to enjoin the Defendants from taking any action adverse to the Plaintiff, administrative or otherwise, that would affect its ability to conduct business in the State of West Virginia" until the issues raised in the complaint were resolved. In essence, SET requested that Relators be enjoined from withholding or revoking its workers' compensation certification due to the company not paying workers' compensation premiums at the reclassification rate.

Relators filed a motion to dismiss the complaint on January 31, 2003, based on venue and notice issues. After a hearing regarding the dismissal motion and SET's motion for injunctive relief, the circuit court issued an order on February 5, 2003, allowing the action to continue with the proviso that "[f]rom the date of the entry of this order until the dissolution of this case, SET shall pay the ordered compensation rate of $28.86 (sic) that George L. Flick, III, Director of Underwriting, alleges is the correct rate for SET's underground mining employees."

SET subsequently filed a motion to clarify the February 5 order. The requested amendment sought to have the $28.96 per hundred underground mining operation rate applied prospectively to any new underground mining workers while the original rate of $6.35 per hundred be maintained for all current employees, including underground miners. At the same time, Relators asked the lower court to reconsider denial of the motion to dismiss. A hearing was held on the motions on February 18, 2003, and an Amended Order was issued on March 26, 2003, which provided in relevant part:

### Conclusions of Law

9. The Court again finds there is a bona fide dispute as to whether Commissioner

---

2. The parties representations in their briefs differ as to whether employees were involved with surface or underground mining at this time.

3. SET alleged in its complaint that the meeting with the Commissioner occurred on June 18, 2002, and that SET memorialized the understanding reached in a letter to the Commissioner dated July 16, 2002.

4. SET initially contended that the Division was untimely in rendering its decision because sixty-days had passed since the reconsideration motion had been filed. However, under the provisions of 85 C.S.R. § 7.3.6.1, the requirements for rendering a final decision on a reconsideration motion is "one hundred-twenty (120) days from the date the employer's request for reconsideration is filed."

Smith reached a valid, legal agreement with the Plaintiff that allowed the Plaintiff to operate at a Diversified Personnel Service 9550 rate [ ]for all employees except surface mining employees. Because there is a genuine dispute as to the rate to be paid by the Plaintiff and because Plaintiff will suffer irreparable harm and has no adequate remedy at law, the Court shall issue a Temporary Restraining Order to prevent the West Virginia Employment Programs from withdrawing certification of Workers' Compensation coverage from SET, and SET shall be allowed to continue to operate and pay the Diversified Personnel Service 9550 rate that was allegedly guaranteed by [ ]Commissioner Smith.

10. Until further Order of the Court SET shall pay this "disputed" Diversified Personnel Service 9550 rate. The compensation rate for any underground miner hired after entry of this Order will be $28.86 [sic] per hundred, the rate that George L. Flick, III, Director of Underwriting, alleges is the correct rate for SET's underground mining employees.

On May 6, 2003, Relators invoked the original jurisdiction of this Court by filing a petition for a writ of prohibition so as to dissolve the temporary restraining order and bar enforcement of the premium rate as established in the lower court's amended order. After due consideration, this Court issued a Rule to Show Cause on July 2, 2003.

5. Other grounds on which Relators relied to contest the temporary restraining order included: improper venue under the provisions of West Virginia Code § 14–14–2 establishing Kanawha County as the exclusive venue for cases in which a state agency is the real party in interest; inadequate notice under the provisions of West Virginia Code § 55–17–3 which mandates that when suit against a state agency is contemplated thirty days notice must be given to the agency and the attorney general before filing suit; and inappropriate consideration by the lower court of facts outside the scope of the pleadings in deciding to deny Relators' motion to dismiss.

6. West Virginia Code § 23–2–17 is entitled "Employer right to hearing; content of petition; appeal" and provides:

Notwithstanding any provision in this chapter to the contrary and notwithstanding any provision in section five [§ 29A–5–5], article

## II. Standard of Review

This writ was filed with the Court pursuant to our original grant of jurisdiction over proceedings involving "habeas corpus, mandamus, prohibition and certiorari." W.Va. Const. art. VIII, § 3; W.Va.Code § 51–1–3 (1923) (Repl.Vol.2000).

As we explained in syllabus point one of *Crawford v. Taylor*, 138 W.Va. 207, 75 S.E.2d 370 (1953), a writ of "[p]rohibition lies only to restrain inferior courts from proceedings in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for writ of error, appeal or certiorari." Consequently, "[a] writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court." Syl. Pt. 2, in part, *State ex rel. Peacher v. Sencindiver*, 160 W.Va. 314, 233 S.E.2d 425 (1977).

## III. Discussion

Although Relators offer several reasons[5] why this Court should issue the requested writ, we need go no further than the jurisdictional problem raised in order to reach our decision to grant the relief sought. The jurisdictional claim Relators make is that the lower court did not have the authority to issue the restraining order because SET had not exhausted the exclusive administrative remedies provided by West Virginia Code § 23–2–17 (1993) (Repl.Vol.2002), before proceeding with its monetary damage suit in the circuit court.[6]

five, chapter twenty-nine-a of this code to the contrary, in any situation where an employer objects to a decision or action of the commissioner made under the provisions of this article, then such employer shall be entitled to file a petition demanding a hearing upon such decision or action which petition must be filed within thirty days of the employer's receipt of notice of the disputed commissioner's decision or action or, in the absence of such receipt, within sixty days of the date of the commissioner's making such disputed decision or taking such disputed action, such time limitations being hereby declared to be a condition of the right to litigate such decision or action and hence jurisdictional.

The employer's petition shall clearly identify the decision or action disputed and the bases upon which the employer disputes the decision or action. Upon receipt of such a petition, the commissioner shall schedule a hearing which

It should be noted as we begin our discussion that the reason underlying SET's request for injunctive relief through the courts was to stop the Division from withdrawing its workers' compensation certification. SET was delinquent in payment of its workers' compensation premiums because it continued to pay the lower diversified employment agency rate while contesting the reclassification decision. If the delinquency was not corrected within a prescribed time, SET would be declared in default of its obligations. In such situations the Division has a statutory obligation to revoke an employer's workers' compensation certification. *See* W.Va.Code § 23–2–5 (1999) (Repl.Vol.2002).[7]

This Court has recognized that the proper remedy for an employer who wishes to challenge a workers' compensation ruling concerning default issues under the Workers' Compensation Act is through the appellate process set forth in West Virginia Code § 23–2–17. *State ex rel. Frazier v. Hrko,* 203 W.Va. 652, 661, 510 S.E.2d 486, 495 (1998). Additionally, details regarding the procedures for administrative hearings governing employer issues such as classification, rates, delinquency and default are addressed by agency rules and regulations. W.Va. 85 C.S.R § 7. A regulatory provision of particular relevance to the issue at hand states that "[e]ach employer who desires to dispute an article two decision or action[8] is required to file a complete and timely request for reconsideration as a condition precedent to filing a petition for an article two hearing under the provisions of W.Va.Code § 23–2–17." W.Va. 85 C.S.R. § 7.3.3 (2002). Thereafter, "[t]he final decision [of the Commissioner as to reconsideration] may be contested under the process provided in W.Va.Code § 23–2–17."

W.Va. 85 C.S.R. § 7.3.8. It is abundantly clear from the representations of the parties and the lower court's order that SET followed these administrative procedures to contest the reclassification and concomitant rate increase. However, it is equally clear that the administrative processes were not exhausted when the suit was filed nor when the restraining order was issued.

■ As we have frequently noted, " ' " '[t]he general rule is that where an administrative remedy is provided by statute or by rules and regulations having the force and effect of law, relief must be sought from the administrative body, and such remedy must be exhausted before the court will act.' Syl. pt. 1, *Daurelle v. Traders Federal Savings & Loan Association,* 143 W.Va. 674, 104 S.E.2d 320 (1958)." Syl. Pt. 1, *Cowie v. Roberts,* 173 W.Va. 64, 312 S.E.2d 35 (1984). Syllabus point 10, *State ex rel. Miller v. Reed,* 203 W.Va. 673, 510 S.E.2d 507 (1998). Syl. Pt. 7, *Expedited Transportation Systems, Inc. v. Vieweg,* 207 W.Va. 90, 529 S.E.2d 110 (2000). While some exceptions to the rule of exhaustion exist, none appear to be applicable nor has such been asserted in the instant case. *See, e.g.,* Syl. Pt. 1, *State ex rel. Bd. of Educ. of Kanawha County v. Casey,* 176 W.Va. 733, 349 S.E.2d 436 (1986) (resort to available procedures would be an exercise in futility); *State ex rel. Arnold v. Egnor,* 166 W.Va. 411, 421, 275 S.E.2d 15, 22 (1981) (lack of agency jurisdiction or the constitutionality of the underlying agency statute); Syl. Pt. 2, *Daurelle v. Traders Federal Sav. & Loan Assn.,* 143 W.Va. 674, 104 S.E.2d 320 (1958) (no administrative remedy provided).

shall be conducted in accordance with the provisions of article five [§ 29A–5–1 et seq.], chapter twenty-nine-a of this code. An appeal from a final decision of the commissioner shall be taken in accord with the provisions of articles five and six [§§ 29A–5–1 et seq. and §§ 29A–6–1 et seq.] of said chapter: Provided, That all such appeals shall be taken to the circuit court of Kanawha county.

7. This statute was later amended by the Legislature during the second extraordinary session of 2003. Even though the enacted changes do not substantively affect matters in the instant case,

we refer to the statute in effect at the time relevant to this case.

8. Article two decisions or actions are defined by the regulations as "a decision or action taken under the provisions of article two, chapter twenty-three of the West Virginia Code." 85 C.S.R. § 7.3.1. Two issues raised by SET to the court below in support of its request for injunctive relief involve article two decisions, namely, an employer's objection to workers' compensation premium rates (W.Va.Code §§ 23–2–1b, 23–2–4) and to certification of coverage and/or withdrawal of the same (W.Va.Code § 23–2–5a).

■ The operation of the doctrine of exhaustion of administrative remedies was further explained in *Bank of Wheeling v. Morris Plan Bank & Trust Company*, 155 W.Va. 245, 183 S.E.2d 692 (1971), wherein we stated:

The doctrine simply provides that when the legislature provides for an administrative agency to regulate some particular field of endeavor, the courts are without jurisdiction to grant relief to any litigant complaining of any act done or omitted to have been done if such act or omitted act is within the rules and regulations of the administrative agency involved until such time as the complaining party has exhausted such remedies before the administrative body.

*Id.* at 249, 183 S.E.2d at 694–95 (citations omitted). Even more pertinent to the action taken by the lower court in the case before us is our holding in syllabus point four of *Bank of Wheeling* which states: "Proceedings in equity for injunctions cannot be maintained where there is an administrative remedy provided by statute which is adequate and will furnish proper remedy." 155 W.Va. at 246, 183 S.E.2d at 693.

■ SET argues that exhaustion of administrative remedies was not necessary in this case because SET was not attempting to appeal the administrative rulings related to its reclassification rates. We find no merit in this proposition. It is obvious that any decision resulting from the administrative process will affect the extent, if any, of SET's damages in the civil claims it filed with the court below. Once again we find a ruling in *Bank of Wheeling* quite pertinent: "The rule of exhausting administrative remedies before actions in courts are instituted is applicable, even though the administrative agency cannot award damages[,] *if the matter is within the jurisdiction of the agency.*" 155 W.Va. at 246, 183 S.E.2d at 693 (emphasis added). In proper situations, damages can be sought in the courts *after* the administrative proceedings have reached their conclusion.

■ As previously related, SET challenged the reclassification and attendant premium rate increase through the administrative process as established in West Virginia

Code § 23–2–17 before it filed suit in the lower court, and the administrative remedy was not exhausted at the time of filing. As a matter of fact, following the denial of its reconsideration motion by the Commissioner but before the lower court issued its March 26, 2003 amended order, SET continued to invoke the administrative process by filing its petition for review with the Office of Judges on March 3, 2003. Since concurrent jurisdiction regarding challenges to decisions involving these matters is not statutorily prescribed, when the lower court acted it did so without jurisdiction of the subject matter, which renders the order void. Syl. Pt. 5, *State ex rel. Hammond v. Worrell*, 144 W.Va. 83, 106 S.E.2d 521 (1958) ("A decree entered in a pending suit in which the court lacks jurisdiction of the subject-matter is to that extent void . . . ."). Unlike personal jurisdiction, subject-matter jurisdiction may not be waived or conferred by consent and must exist as a matter of law for the court to act. For this reason, lack of jurisdiction of the subject matter may be raised for the first time in this Court and even upon this Court's own motion. Syl. Pt. 6, *State ex rel. Hammond v. Worrell*, 144 W.Va. 83, 106 S.E.2d 521 (1958), citing Syl. Pt. 3, *Charleston Apartments Corp. v. Appalachian Electric Power Co.*, 118 W.Va. 694, 192 S.E. 294. Furthermore, this Court will reverse a trial court which exceeds its lawful jurisdiction. Syl. Pt. 3, *Hinkle v. Bauer Lumber & Home Bldg. Center, Inc.*, 158 W.Va. 492, 211 S.E.2d 705 (1975). This Court in *Morris v. Calhoun*, 119 W.Va. 603, 195 S.E. 341 (1938), recognized the appropriateness of prohibition as a remedy to situations where the lower court lacked jurisdiction by stating:

[W]hen a court is attempting to proceed in a cause without jurisdiction, prohibition will issue as a matter of right, regardless of the existence of other remedies, and regardless of whether or not the objections to the jurisdiction of the trial court have been presented to that court prior to the application for relief here.

*Id.* at 608, 195 S.E. at 345 (citations omitted).

Inasmuch as the lower court lacked jurisdiction, the March 26, 2003, order is void, and

its provisions, including the temporary restraining order, are unenforceable.[9] For these reasons, the writ of prohibition is granted.

Writ granted.

---

[9] For the reasons noted herein, the money damage portion of the suit must also be dismissed until administrative remedies are exhausted. If it is appropriate to re-institute the damage suit at that time, the proper notice and venue provisions would necessarily have to be observed.