IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2025 Term

FILED

November 13, 2025

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 24-386

In Re R.D. and S.D.

Appeal from the Circuit Court of McDowell County
The Honorable Rudolph J. Murensky II, Judge
Civil Action Nos. 22-A-8, 22-A-9, 2023-JA-22, and 2023-JA-23

REVERSED IN PART, AFFIRMED IN PART, AND REMANDED WITH
DIRECTIONS

Submitted: October 21, 2025
Filed: November 13, 2025

Jeremy B. Cooper
Blackwater Law PLLC
Pittsburgh, Pennsylvania
Counsel for the Petitioner

John B. McCuskey
Attorney General
Kristen E. Ross
Assistant Attorney General
Charleston, West Virginia
Counsel for Department of Human
Services

Patricia Kinder Beavers
Beavers Law Firm, PLLC
Bluefield, West Virginia
Counsel for T.V. and R.V.

Monica O. Holliday
ChildLaw Services, Inc.
Princeton, West Virginia
Guardian ad litem

JUSTICE EWING delivered the Opinion of the Court.

**SYLLABUS OF THE COURT**

1.     "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syllabus Point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).

2.     "The Uniform Child Custody Jurisdiction and Enforcement Act, West Virginia Code § 48–20–101, *et seq.*, is a jurisdictional statute, and the requirements of the statute must be met for a court to have the power to adjudicate child custody disputes." Syllabus Point 6, *Rosen v. Rosen*, 222 W. Va. 402, 664 S.E.2d 743 (2008).

3.     "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the

record viewed in its entirety." Syllabus Point 1, *In Interest of Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996).

**EWING, Justice:**

The petitioner, D.D.,[1] is the biological father of children R.D. and S.D. The children were the subjects of a lengthy dependency and neglect case in the Juvenile Court for Sumner County, Tennessee at Gallatin ("the Tennessee court") that led to their placement with T.V. and R.V., at their home in McDowell County, West Virginia, in February 2022. In June 2022, the Circuit Court of McDowell County granted T.V. and R.V.'s petitions to adopt the children, believing that the Tennessee court had terminated the petitioner's parental rights. The following year, the circuit court learned that its belief was mistaken. The Tennessee court subsequently transferred the dependency and neglect matter to the circuit court, and the circuit court consolidated all proceedings related to R.D. and S.D. Various filings followed, including amended petitions for adoption, objections to those petitions, and motions to terminate the petitioner's parental rights. Finally, by order entered in June 2024, the circuit court upheld the June 2022 adoption orders, and, alternatively, modified the disposition of the Tennessee court and terminated the petitioner's parental rights.

Upon review, we reverse, in part, and affirm, in part, that order. For the reasons set forth below, the circuit court lacked jurisdiction over custody determinations regarding R.D. and S.D. in June 2022, so those orders are void and the relevant portions of the June 2024 order must be reversed. However, we find no error in the circuit court's

---

[1] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

1

modification of the disposition imposed by the Tennessee court and the termination of the petitioner's parental rights after the Tennessee court surrendered jurisdiction, and we therefore affirm the related portions of the June 2024 order. This case is remanded for further proceedings consistent with this opinion.

## I. Factual and Procedural History

This appeal presents a complicated factual and procedural history spanning five years and two states. For the sake of clarity, we separate it into four stages: A. the Tennessee dependency and neglect case, B. the adoption proceeding in West Virginia, C. the transfer of the dependency and neglect case from Tennessee to West Virginia, and D. post-transfer proceedings in West Virginia.

## A.    The Tennessee Dependency and Neglect Case

In June 2019, the Department of Children's Services of the State of Tennessee ("DCS") filed a petition in the Tennessee court alleging that then two-year-old R.D. and four-year-old S.D. were dependent and neglected children due to the mother's substance abuse.[2] At the time, the petitioner had served approximately two years of an eight-year term of incarceration imposed after he pled guilty to one count of aggravated

_____

[2] The mother did not appear during the proceedings, below. The circuit court also terminated the mother's parental rights in the June 2024 order. The mother did not appeal that ruling; however, it is necessary at times to discuss her role in the facts culminating in this appeal.

assault (strangulation) against the mother.[3]  In July 2019, DCS placed R.D. and S.D. with their maternal grandmother, B.V., pursuant to an Immediate Protection Agreement ("IPA").  The Tennessee court incorporated the IPA into the August 12, 2019, order that followed the mother's preliminary hearing and continued the placement pending further order.

The Tennessee court conducted an adjudicatory hearing on November 6, 2019.  There, the petitioner stipulated that R.D. and S.D. were "dependent and neglected children" due to his conduct.  *See* Tenn. Code Ann. § 37-1-102(b)(13)(A) (2019) (defining "[d]ependent and neglected child" to include a child who, "at the time of the filing of the petition . . . is without a parent, guardian, or legal custodian").  The Tennessee court placed the children in the physical and legal custody of B.V. but specified that the petitioner could later seek to modify that placement.[4]

---

[3] In a court report, DCS noted that the mother "reported an immense amount of domestic violence between [the petitioner and the mother] that occurred in front of the children."

[4] Under Tennessee law, biological parents are afforded a presumption of "superior parental rights" in initial custody disputes between a parent and a non-parent.  *See Blair v. Badenhope*, 77 S.W.3d 137, 141 (Tenn. 2002).  However, once a "valid custody order granting custody to a non-parent" has been entered, the biological parent is no longer "entitled to a presumption of superior parental rights, absent specific extraordinary circumstances," not implicated here.  *Sikora ex rel. Mook v. Mook*, 397 S.W.3d 137, 143 n.5 (Tenn. Ct. App. 2012) (internal quotation omitted).  Therefore, and as explained by the Tennessee court in its April 3, 2023, order, placement of the children in the legal and physical custody of B.V. stripped the petitioner of his "superior parental rights," only.

B.V. suffered an incapacitating stroke in March 2021 and died in early April 2021. The children's maternal aunt, T.V., a resident of McDowell County, West Virginia, travelled to Tennessee to care for the children, along with a relative who lived across the street from B.V. DCS filed a petition alleging that R.D. and S.D. were dependent and neglected children due to B.V.'s death, the mother's continued absence and failure to comply with recommendations attendant to the 2019 adjudication, and the petitioner's continued incarceration.

In May 2021, the Tennessee court granted temporary protective custody of the children to a relative, A.V., who lived near B.V., in Tennessee. DCS then began the process under the Interstate Compact on the Placement of Children ("ICPC") to place the children with T.V. and her spouse, R.V., in West Virginia. T.V. and R.V. passed the ICPC home study, and the Tennessee court approved temporary placement of the children in their McDowell County home.[5] By order entered September 23, 2021, the Tennessee court again found the children to be dependent and neglected pursuant to Tennessee Code

---

[5] Petitioner wrote a letter to the Tennessee court in July 2021. In that letter, petitioner expressed gratitude to A.V. and T.V. for caring for R.D. and S.D., although he was concerned that he had had "zero contact" with the children since B.V. died. The petitioner informed the Tennessee court of an upcoming, December 2021, parole hearing, and that he hoped to be released from incarceration in January 2022. The petitioner "request[ed] the court to grant custody of the children to [his] mother," M.D.

M.D. did, in fact, seek custody of the children. The Tennessee court granted her intervenor status. Following a home study, the Tennessee court declined to consider M.D. for temporary placement because "the children [were] thriving" with T.V. and R.V., and M.D.'s "home [was] not satisfactory . . . ."

4

Annotated § 37-1-102(b)(13)(A), because B.V.'s death "left the children without a proper caregiver[,] [t]he mother's whereabouts were unknown[, and the petitioner] is imprisoned in a local facility . . . [a]nd is not scheduled to be released until January 2022." The Tennessee court continued the children's placement with T.V. and R.V. At this time, the petitioner and the children spoke by telephone approximately once per month.

The petitioner was paroled in January 2022, and the Tennessee court conducted a final review hearing on February 1, 2022. The petitioner received notice of the hearing but did not attend. On February 2, 2022, the Tennessee court entered the "Adjudicatory and Final Dispositional Order" ("February 2022 Order"), in which it granted full legal and physical custody of the children to T.V. and R.V., relieved appointed counsel, and directed DCS to close the case. The Tennessee court did not terminate the petitioner's parental rights, however.

## B.     The Adoption Proceeding in West Virginia

T.V. and R.V. petitioned the Circuit Court of McDowell County to adopt R.D. in April 2022, and S.D. in May 2022. T.V. and R.V. incorrectly alleged that the Tennessee court had terminated the mother and the petitioner's "parental, custodial and guardianship rights" in February 2022, and that the children had lived with them for more than six months before the filing of the petition for adoption. R.V. and T.V. attached the

5

February 2022 Order to the petitions. The Circuit Court of McDowell County granted the petitions by orders entered on June 21, 2022 ("June 2022 Adoption Orders").[6]

T.V. and R.V. continued to allow the petitioner to speak to the children over the telephone. T.V. later testified that when she monitored the calls, she heard the petitioner lying to the children about his location. According to T.V., this upset the children because they knew that the petitioner was attempting to hide the fact that he was then at the mother's house and that the petitioner had physically abused the mother. R.D. told the petitioner that T.V. and R.V. had adopted the children during a call in July 2022.[7] The petitioner became very angry when informed of the adoption, cursed at R.D., and then cursed at T.V. after she took the phone from R.D.[8] The petitioner called T.V. and R.V.'s home again and threatened R.V., so that by August or September 2022, they no longer

---

[6] The circuit court entered the final orders in R.D. and S.D.'s adoption cases on June 21, 2022. The circuit court entered an "Amended Final Order of Adoption" in both cases on June 30, 2022. According to the circuit court, the amended orders "contain stylistic changes." The circuit court entered "Second Amended Final Adoption Order[s]" in both cases on December 19, 2022. According to the circuit court, the second amended orders "directed that the social security numbers of the subject children be changed." Despite those successive, amended orders, the circuit court stated in the June 5, 2024, order that, "[t]o be clear: the *adoptions* of the subject children were accomplished by the [c]ourt's respective *Final Order[s] of Adoption* entered on **June 21, 2022**, in McDowell County Action Nos. 22-A-8 and 22-A-9." (Emphasis in original).

[7] T.V. also testified this telephone call occurred in August 2022.

[8] During an evidentiary hearing in May 2024, T.V. testified that after the petitioner cursed at R.D., the child "started to – to cry, and he kind of crawled upon my lap and [said] 'did he do something wrong,' and I said, 'No, you did not. This is not your fault.'"

allowed the children to speak to the petitioner by telephone. The petitioner violated the terms of his parole and was reincarcerated in December 2022.

## C.     The Transfer from Tennessee to West Virginia

The petitioner wrote to the Tennessee court in February 2023 and asked for a hearing. The petitioner went on to explain that "other than being incarcerated," he had "done nothing wrong," and that he wanted his children returned to him upon his release from incarceration. On March 13, 2023, the petitioner filed a motion with the Tennessee court to set a court date and reiterated that he had not been allowed any contact with the children since the preceding July, and that the children were in the custody of T.V. and R.V. Shortly after, T.V. and R.V. provided the Tennessee court with the June 2022 Adoption Orders. After reviewing the orders, the Tennessee court conferred with the circuit court on March 31, 2023.

On April 3, 2023, the Tennessee court entered an "Order to Transfer Jurisdiction" to the circuit court. In that order, the Tennessee court explained that its February 2022 Order *did not* terminate the mother or the petitioner's parental rights—only their "superior parental rights"[9]—and that no proceedings had been filed with the Tennessee court to terminate the mother and the petitioner's parental rights. The Tennessee court went on to state that, "[o]n March 31, this [c]ourt held a [Uniform Child Custody Jurisdiction Enforcement Act] conference with" the circuit court, during which the

---

[9] *See* supra n.4.

Tennessee court explained "the factual inaccuracy" of the June 2022 Adoption Orders. According to the Tennessee court, the circuit court "agreed that the adoption order[s] would have been entered in error," then requested that the Tennessee court transfer jurisdiction over R.D. and S.D. to the circuit court as the children now resided in McDowell County. The Tennessee court agreed, explaining that "[w]hile Tenn. Code Ann. § 37-1-103 authorize[d] it to continue its exclusive, original jurisdiction over" the children and the petitioner continued to reside in Tennessee, the children were now West Virginia residents and the mother's whereabouts remained unknown. Thus, the Tennessee court concluded, West Virginia was the more appropriate forum "for all adjudicatory and dispositional purposes" and relinquished jurisdiction over the children to the circuit court. *See* Tenn. Code Ann. § 36-6-222(a) (1999) ("A court of this state which has jurisdiction under this part to make a child-custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum.").[10] The circuit court received the case files from the Tennessee court in April 2023 and split the dependency and neglect proceeding into two abuse and neglect cases: 2023-JA-22 (related to R.D.) and 2023-JA-23 (related to S.D.).

---

[10] The petitioner later attempted to appeal this order to the Court of Appeals of Tennessee. The Court of Appeals dismissed petitioner's appeal for failure to file a timely notice of appeal. In the Memorandum Opinion dismissing petitioner's appeal, the Court of Appeals stated that, "[n]othing in this opinion shall prohibit [petitioner] from seeking relief in the Circuit Court for McDowell County, West Virginia."

8

**D.   Post-Transfer Proceedings in West Virginia**

In June 2023, T.V. and R.V. filed motions in the adoption cases to terminate the mother and the petitioner's parental rights. Regarding the petitioner, T.V. and R.V. asserted that the Tennessee court found R.D. and S.D. to be dependent and neglected children based, in part, on the petitioner's incarceration. T.V. and R.V. further stated that, the petitioner "remained in jail, is unemployed and homeless;" "there had been no substantial improvement for either of the parents;" and "there [was] no reasonable likelihood that the conditions of abuse can be substantially corrected in the near future, or that either of the biological parents could have a meaningful relationship with the children . . . ." In March 2024, the Department of Human Services ("DHS") moved to terminate the mother and the petitioner's parental rights to R.D. and S.D. on similar grounds in the abuse and neglect cases.

The circuit court conducted a status hearing on December 1, 2023. The petitioner, then incarcerated, appeared via Microsoft Teams and by his guardian ad litem.[11] In the order entered following the hearing, the circuit court found that it had entered the June 2022 Orders "improvidently," and that the adoption cases "amount[ed] to contested adoptions." The circuit court ordered T.V. and R.V. to file amended petitions to adopt

---

[11] The circuit court appointed E. Ward Morgan as the petitioner's guardian ad litem in the adoption cases and counsel in the dependency and neglect cases transferred from Tennessee. The circuit court later relieved Mr. Morgan as the petitioner's guardian ad litem in the adoption cases following the January 17, 2024, hearing because the petitioner was no longer incarcerated.

R.D. and S.D. T.V. and R.V. later filed the amended petitions and alleged that the petitioner had abandoned the children, so his consent was not needed to proceed with the adoptions. *See* W. Va. Code § 48-22-301(b)(2) (2018) (stating that "[c]onsent or relinquishment" of minor child for adoption "shall not be required of a parent . . . [w]hom the court finds has abandoned the child"). The petitioner objected, stating that the mother had prevented him "from exercising his full parental rights . . . ."

The circuit court convened a status hearing on January 8, 2024, via Microsoft Teams. The petitioner, who had been released from incarceration following the December 2023 hearing, did not appear. The circuit court continued the hearing until January 17, 2024. The petitioner did not appear for the January 17, 2024, status hearing, but his guardian ad litem was present. As reflected in the order entered following the hearing, the petitioner had been released from prison but did not have a permanent address. In that same order, the circuit court consolidated the adoption cases and the abuse and neglect cases, directed the DHS to file motions to terminate the parental rights of the mother and the petitioner, and ordered the children's guardian ad litem to do likewise and answer the amended petitions for adoption.

The circuit court convened what was to be both an evidentiary hearing for the adoption cases and a "modification/permanency hearing" for the abuse and neglect cases on March 26, 2024. The petitioner did not appear. Counsel represented that his client was experiencing car trouble that stranded him in Knoxville, Tennessee, and moved to continue the hearing. The circuit court continued the evidentiary hearing to May 23, 2024.

10

The petitioner did not appear for the May 23, 2024, hearing. According to the petitioner's counsel, the two spoke several days earlier, and the petitioner told counsel that he planned to attend. Counsel represented that he had called the petitioner the morning of the hearing, but the petitioner did not answer the telephone nor could counsel leave a voicemail message. Before receiving testimony, the circuit court explained that it would treat the petitioner's "pleadings as an attempt to set aside the adoption because he was wanting his children back." The circuit court further explained that it was "giving full faith and credit to the Tennessee orders, which found the parents guilty of abuse and neglect," so the present hearing related to the question of disposition or whether to modify the disposition that left the mother and the petitioner's parental rights intact.

Two witnesses testified during the hearing: T.V. and Regina Mullins, the Child Protective Services worker. T.V. testified that the petitioner was incarcerated in 2017, when R.D. was approximately seven months old.[12] She described the phone calls between the petitioner and the children, as well as the petitioner's reaction upon learning of the adoptions. T.V. testified that she would oppose allowing communication between the petitioner and the children because the petitioner had upset the children during phone calls and continued communication "would keep them upset and confused and wondering what would happen down the road . . . ." T.V. testified that the children had adjusted well to life with her and R.V.

---

[12] S.D. was approximately three years old then.

11

Ms. Mullins testified that she had "[n]o concerns whatsoever" with T.V. and R.V., and that it was in the children's best interest to be adopted by the couple. Ms. Mullins further stated that the petitioner had never contacted her. Following closing arguments, the circuit court ruled from the bench that it would not set aside the June 2022 Adoption Orders and that it would modify the disposition imposed by the Tennessee court and terminate the petitioner's parental rights.

The court memorialized those rulings in the "Final Order Refusing to Set Aside Prior Adoption Orders and Involuntarily Terminating the Parental, Custodial, and Guardianship Rights of the Biological Mother and the Biological Father," entered June 25, 2024 ("June 2024 Order"). In that order, the circuit court refused to vacate the June 2022 Adoption Orders because the petitioner learned that T.V. and R.V. had adopted the children in July 2022 but waited until March 2023 to take any steps to challenge the adoptions, which was months after the statutory, six-month window during which a person may challenge an adoption on grounds of inadequate notice. *See* W. Va. Code § 48-22-704(b) (2001) (providing that an order of adoption cannot be vacated on any grounds more than six months after entry) and (c) (providing that a person claiming insufficient notice of an adoption may challenge the adoption up to six months after entry of the adoption order and must show by clear and convincing evidence that the adoption is not in the child's best interest).

In the alternative, the circuit court modified the earlier disposition pursuant to West Virginia Code § 49-4-606(a) (2015) and Rule 46 of the Rules of Procedure for

12

Child Abuse and Neglect Proceedings and terminated the mother and the petitioner's parental rights. Relevant to the petitioner, the circuit court found that he had offered no proof of a change in circumstances that would warrant the return of the children to him. The circuit court found that the DHS and the children's guardian ad litem had offered evidence of a material change in circumstances sufficient to support modification, including that petitioner shouted obscenities at R.D. when the two spoke on July 26, 2022, and petitioner failed to acknowledge the issues that gave rise to the 2019 dependency and neglect petition in Tennessee. In addition, the circuit court found that the petitioner had not attended a duly noticed hearing since December 2023, and that termination of the petitioner's parental rights was in the best interests of R.D. and S.D. because the children needed "permanency, security, stability, and continuity." The petitioner now appeals the June 2024 Order.

## II. Standards of Review

The petitioner's assignments of error are subject to different standards of review. So, we set out those distinct standards in the appropriate sections of the discussion that follow.

## III. Discussion

The petitioner assigns two errors to the June 2024 Order. First, the petitioner argues that the circuit court erroneously affirmed the June 2022 Adoption Orders. According to the petitioner, those orders are void because he did not receive notice of the

13

adoption proceedings so that he was not subject to the jurisdiction of the circuit court. Second, the petitioner asserts that the circuit court erroneously terminated his parental rights in the abuse and neglect matters by modifying the Tennessee court's original disposition, rather than pursuant to an amended petition and adjudication. In addressing the assignments of error, we first consider the June 2022 Adoption Orders.

## A.    June 2022 Adoption Orders

The circuit court entered the June 2022 Adoption Orders believing that R.D. and S.D. were "proper subject[s] for adoption" because the Tennessee court had terminated the mother and the petitioner's parental rights the preceding February. *See* W. Va. Code § 48-22-701(b) (2001). Yet, as we now know, that was not the case. As the Tennessee court explained in April 2023, it "did not terminate the parents' parental rights," and "no proceedings [had been] filed in [the Tennessee court] to terminate their parental rights." Due to that irreconcilable discrepancy, the June 2022 Adoption Orders cannot be treated simply as orders granting T.V. and R.V.'s uncontested petitions to adopt the children. Instead, and on the singular facts of this case, we must treat those orders as the product of a custody proceeding (i.e., the termination of the mother and the petitioner's parental rights) followed by an adoption proceeding. *See, e.g.*, *In re Adoption of L.U.*, 292 A.3d 1076, *6 (Pa. Super. Ct.), *appeal denied*, 293 A.3d 566 (Pa. 2023) (explaining that petitioner-father's "argument is predicated upon an incorrect assumption: that there are custody cases and then are adoption cases, and never the two shall meet"); *D.B. v. M.A.*, 975 So. 2d 927, 936 (Ala. Civ. App. 2006), *aff'd sub nom. Ex parte D.B.*, 975 So. 2d 940

14

(Ala. 2007) ("Logically, before a child can be adopted, the biological father's parental rights must be terminated, and the matter of custody must be resolved.").

Against that backdrop, the petitioner argues that he was not subject to the personal jurisdiction of the circuit court because he was not notified of T.V. and R.V.'s petitions.[13] Despite the petitioner's focus on personal jurisdiction, we discern a different jurisdictional defect in the June 2022 Adoption Orders: the circuit court lacked subject matter jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act, West Virginia Code §§ 48-20-101 to 404 ("UCCJEA") to modify the Tennessee court's earlier custody determination regarding R.D. and S.D. by terminating the mother and the petitioner's parental rights in the adoption cases. *See* Syl. Pt. 1, *Leslie Equip. Co. v. Wood Res. Co.*, 224 W. Va. 530, 687 S.E.2d 109 (2009) ("'To enable a court to hear and determine an action, suit or other proceeding it must have jurisdiction of the subject matter *and* jurisdiction of the parties; both are necessary and the absence of either is fatal to its jurisdiction.'") (quoting Syl. Pt. 3, *State ex rel. Smith v. Bosworth*, 145 W. Va. 753, 117 S.E.2d 610 (1960)). "Whether a court has subject matter jurisdiction over an issue is a question of law," *Snider v. Snider*, 209 W. Va. 771, 777, 551 S.E.2d 693, 699 (2001), as is the applicability of a statute such as the UCCJEA. "Where the issue on an appeal from the

---

[13] The petitioner asserts that he may raise an objection to personal jurisdiction for the first time on appeal. That is not correct. *See State ex rel. Smith v. Thornsbury*, 214 W. Va. 228, 233, 588 S.E.2d 217, 222 (2003) (explaining that "[*u*]nlike *personal jurisdiction*, subject-matter jurisdiction may not be waived or conferred by consent and must exist as a matter of law for the court to act," so "lack of jurisdiction of the subject matter may be raised for the first time in this Court and even upon this Court's own motion").

15

circuit court is clearly a question of law or involving an interpretation of a statute, we apply

a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995).

"The [UCCJEA] is a jurisdictional statute, and the requirements of the statute must be met for a court to have the power to adjudicate child custody disputes." Syl. Pt. 6, *Rosen v. Rosen*, 222 W. Va. 402, 664 S.E.2d 743 (2008). Whether the requirements of that statute were met in this matter "may be raised for the first time in this Court and even upon this Court's own motion." *State ex rel. Smith v. Thornsbury*, 214 W. Va. 228, 233, 588 S.E.2d 217, 222 (2003); *see also In re Z.H.*, 245 W. Va. 456, 463, 859 S.E.2d 399, 406 (2021) (considering subject matter jurisdiction under the UCCJEA, sua sponte). Therefore, we may properly raise the issue of subject matter jurisdiction under the UCCJEA, for the first time.[14]

---

[14] The parties state that the UCCJEA does not apply to the proceedings in circuit court that predated the Tennessee court's April 3, 2023, order transferring jurisdiction because they were "adoption proceedings." *See* W. Va. Code § 48-20-103 (2001) ("This chapter [sic] does not govern an adoption proceeding or a proceeding pertaining to the authorization of emergency medical care for a child."). We disagree. As explained above, in the unique facts of this case, the proceedings in the circuit court that pre-dated the April 2023 transfer of jurisdiction from the Tennessee court were not simply an adoption matter.

It would be fundamentally unfair to ignore that the circuit court "improvidently" entered an order that terminated the mother and the petitioner's parental rights while the Tennessee court exercised continuing, exclusive jurisdiction over custody determinations regarding R.D. and S.D. It runs counter to the purposes of the UCCJEA to shield the circuit court's interference with the Tennessee court's custody determination (however inadvertent) by labelling it "an adoption proceeding," rather than what it effectively was: a "child custody proceeding" followed by an adoption. *See* W. Va. Code § 48-20-102(d) (2001) ( "child custody proceeding" for purposes of the UCCJEA "includes a proceeding

We begin our de novo review of the respective courts' authority to determine the custody of R.D. and S.D. by observing that the UCCJEA "is a model law adopted in West Virginia that governs subject matter jurisdictional issues for all child custody proceedings," including initial custody determinations and modifications. *In re Z.H.*, 245 W. Va. at 463, 859 S.E.2d at 406; *see* W. Va. Code §§ 48-20-201 (2001) (setting forth jurisdiction over initial child custody determination); 48-20-203 (2001) (setting forth jurisdiction to modify a child custody determination). The UCCJEA defines a "child custody proceeding" to include a "proceeding for . . . neglect, abuse, dependency, [or] termination of parental rights . . . ." *Id.* § 48-20-102(d) (2001). A "'[c]hild custody determination' means a judgment, decree or other order from a court providing for the legal custody, physical custody or visitation with respect to a child," and "includes a permanent, temporary, initial and modification order." *Id.* § 48-20-102(c). For UCCJEA purposes, an "'[i]nitial determination' means the first child custody determination concerning a particular child," whereas a "modification" is a "determination that changes, replaces,

---

for . . . termination of parental rights"); UNIF. CHILD CUSTODY JURISDICTION AND ENFORCEMENT ACT, cmt. 1 § 101 (Nat'l Conf. of Comm'rs of Unif. State Laws 1997) (the UCCJEA "should be interpreted according to its purposes which are to," among others, "[a]void jurisdictional competition and conflict with courts of other States in matters of child custody" and "[f]acilitate the enforcement of custody decrees of other States").

Finally, West Virginia Code § 48-20-103 corresponds to § 103 of the model UCCJEA. The drafters of the model UCCJEA stated in the comments to that section that, "there are likely to be a number of instances where it will be necessary to apply this Act in an adoption proceeding." UNIF. CHILD CUSTODY JURISDICTION AND ENFORCEMENT ACT, cmt. 2 § 103. We believe that the unique facts of this matter are such an instance.

supersedes or is otherwise made after a previous determination concerning the same child, whether or not it is made by the court that made the previous determination." *Id*. § 48-20-102(h) and (k). Tennessee has also adopted the UCCJEA, and defines "child custody proceeding," "child custody determination," "initial determination," and "modification" nearly identically. *See* Tenn. Code Ann. §§ 36-6-201 to 243.

West Virginia Code § 48-20-201(a) provides four bases of jurisdiction for a West Virginia court to make an initial custody determination:

> (a) Except as otherwise provided in section 20-204 [§ 48-20-204] , a court of this State has jurisdiction to make an initial child custody determination only if:
>
> (1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding, and the child is absent from this State but a parent or person acting as a parent continues to live in this State;
>
> (2) A court of another state does not have jurisdiction under subdivision (1) of this subsection, or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under section 20-207 [§ 48-20-207] or 20-208 [§ 48-20-208], and:
>
> (A) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this State other than mere physical presence; and
>
> (B) Substantial evidence is available in this State concerning the child's care, protection, training and personal relationships;
>
> (3) All courts having jurisdiction under subdivision (1) or (2) of this subdivision have declined to exercise jurisdiction on the ground that a court of this State is the more appropriate

18

forum to determine the custody of the child under section 20-207 or 20-208; or

(4) No court of any other state would have jurisdiction under the criteria specified in subdivision (1), (2) or (3) of this subsection.

*Id*. § 48-20-201(a). "These four bases have been aptly summarized as 1) 'home state' jurisdiction; 2) 'significant connection' jurisdiction; 3) 'jurisdiction because of declination of jurisdiction'; and 4) 'default' jurisdiction." *In re K.R.*, 229 W. Va. 733, 740, 735 S.E.2d 882, 889 (2012). Tennessee Code Annotated § 36-6-216(a) (2010) contains those same bases for a court of that state to exercise jurisdiction over the initial custody determination in a child custody proceeding.

Returning to the facts of this matter, we see that the "initial determination" in a "child custody proceeding" concerning R.D. and S.D. was made by the Tennessee court in July 2019, when that court placed the children with their maternal grandmother after DCS filed the first dependency-and-neglect petition in June 2019. There appears to be no dispute that Tennessee was then the children's "home state." *See* Tenn. Code Ann. § 36-6-205(6) (1999) (defining "home state" as "the state in which a child lived with a parent . . . for at least six (6) consecutive months immediately before the commencement of a child custody proceeding"). The children were more than six months old when the petition was filed in June 2019, and there is no suggestion in the record that they lived in a state other than Tennessee with a parent during the six months immediately preceding the filing of the dependency-and-neglect petition. Consequently, the Tennessee court

19

exercised "home state" jurisdiction under Tennessee Code Annotated § 36-6-216(a)(1) to make the initial custody determination regarding R.D. and S.D.

As the court that made the initial custody determination regarding R.D. and S.D., the Tennessee court retained

> exclusive, continuing jurisdiction over the determination until:
>
> (1) A court of [Tennessee] determine[d] that neither the child, nor the child and one (1) parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or
>
> (2) A court of [Tennessee] or a court of another state determine[d] that the child, the child's parents, and any person acting as a parent do not presently reside in this state.

Tenn. Code. Ann. § 36-6-217(a) (1999). The record does not reflect that either the Tennessee court or a court of another state made the determinations specified in § 36-6-217(a)(1) or (2) subsequent to the Tennessee court's initial custody determination in July 2019. Absent those determinations, the Tennessee court maintained its exclusive, continuing jurisdiction over the custody of R.D. and S.D. from the initial custody determination in July 2019 until it transferred jurisdiction to the circuit court in April 2023.

As stated above, the UCCJEA also contains jurisdictional rules for the modification of child custody determinations. So, we must consider whether the circuit court had authority to modify the Tennessee court's custody determinations regarding R.D.

and S.D. in June 2022 as part of the adoption proceedings, despite the Tennessee court's exclusive, continuing jurisdiction. Under West Virginia Code § 48-20-203,

> [A] court of [West Virginia] may not modify a child custody determination made by a court of another state *unless* a court of this state has jurisdiction to make an initial determination under subdivision (1) or (2), subsection (a), section 20-201 [§ 48-20-201] and:
>
> (1) The court of the other state determines it no longer has exclusive, continuing jurisdiction under section 20-202 [§ 48-20-202] or that a court of [West Virginia] would be a more convenient forum under section 20-207 [§ 48-20-207]; or
>
> (2) A court of [West Virginia] or a court of the other state determines that the child, the child's parents and any person acting as a parent do not presently reside in the other state.

Accordingly, a West Virginia court may not modify the custody determination of another court unless (1) the West Virginia court has jurisdiction to make an initial determination, and (2) the court of the other state determines that it no longer has jurisdiction or no longer wishes to exercise it, or (3) the West Virginia court or the court of the other state determines that the child, the child's parents, and any person acting as a parent no longer reside in the other state. *Id.* § 48-20-103.

Applied to the facts before us, we conclude that the circuit court was not permitted to modify the Tennessee court's custody determination regarding R.D. and S.D. and terminate the mother and the petitioner's parental rights by means of the June 2022 Adoption Orders. True, by June 2022, West Virginia had "home state" jurisdiction to make an initial custody determination regarding R.D. and S.D.; the children had lived with R.V.

21

and T.V. in McDowell County for approximately one year, by then. However, the Tennessee court maintained continuing, exclusive jurisdiction over the custody determinations regarding R.D. and S.D., and it did not relinquish jurisdiction until the following year. Finally, while the children no longer resided in Tennessee in June 2022, the petitioner did. Regardless, the record contains no determination by the Tennessee court or the circuit court that the petitioner did *not* live in Tennessee in June 2022, so subsection (2) of § 48-20-203 cannot be satisfied.

Given those circumstances, the Tennessee court retained continuing, exclusive jurisdiction to determine custody of R.D. and S.D. in June 2022, and West Virginia Code § 48-20-103 did not authorize the circuit court to modify that state's prior custody determination to terminate the mother and the petitioner's parental rights in the June 2022 Adoption Orders. "Without question, subject-matter jurisdiction must exist as a matter of law for the court to act. Consequently, any decree made by a court lacking subject-matter jurisdiction is void . . . ." *In re Guardianship of K.W.*, 240 W. Va. 501, 510, 813 S.E.2d 154, 163 (2018) (internal notes, citations, and alternations omitted). Moreover, subject matter jurisdiction under the UCCJEA must have existed at the time the June 2022 Adoption Orders were entered, and the fact that the Tennessee court later relinquished jurisdiction over R.D. and S.D. cannot cure the jurisdictional defect. *See* Tenn. Code Ann. § 36-6-222(a) (1999) (Tennessee court with jurisdiction over custody determination may decline to exercise jurisdiction if it determines that another state is a more appropriate forum); *In re A.T.-1*, 248 W. Va. 484, 493, 889 S.E.2d 57, 66 (2023) (a court cannot "'cure'

22

a jurisdictional defect in the UCCJEA context by later acquiring jurisdiction"). For those reasons, the June 2022 Adoption Orders are void[15] and the circuit court erred when it refused to vacate them in the June 2024 Order.

## B.    Modification of Disposition

We now turn to the petitioner's second assignment of error. Petitioner asserts that the circuit court plainly erred by "modifying the disposition to terminate the [p]etitioner's parental rights on accusations that were never subject to an amended petition and adjudication," which is that the petitioner abandoned R.D. and S.D.[16] and that he cursed at R.D. during a telephone call in July 2022. The petitioner argues that because he was not adjudicated as to those allegations, the circuit court plainly erred when it relied on them to terminate his parental rights.

The DHS responds that (1) the circuit court appropriately applied West Virginia Code § 49-4-606(a) and Rule 46 of the West Virginia Rules for Child Abuse and Neglect Proceedings to modify the disposition, (2) the circuit court did not terminate the petitioner's parental rights due to abandonment, and (3) this Court has affirmed modifications of dispositions resulting in the termination of parental rights. DHS also

---

[15] The amended adoption orders entered on June 30, 2022, and December 19, 2022, are void for the same reason.

[16] The petitioner is incorrect that the circuit court found that the petitioner had abandoned R.D. and S.D. The circuit court made this clear when it stated that, "[g]iven the totality of the circumstances herein, the [c]ourt declines to find that the biological father abandoned the subject children . . . ."

23

asserts that a material change in the children's circumstances supports the modification: that is, "the children having lived with T.V. and [R.V.] for over two years, obtaining new lives in another state, and receiving emotional abuse during the limited phone contact [the petitioner] had with them while living with T.V. and [R.V.]." The guardian ad litem responds that the circuit court did not base modification on abandonment or the July 2022 phone call. T.V. and R.V. emphasize Ms. Mullins's testimony that termination of the petitioner's parental rights was in the children's best interest, along with the petitioner's failure to contact Ms. Mullins and his "violent disposition."

Because the petitioner challenges the disposition in an abuse and neglect matter, we apply the following standards:

> "[a]lthough conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996).

24

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).  Applying those standards

to this case, we find no reversible error in the circuit court's ruling to modify the disposition

originally ordered by the Tennessee court and terminate the petitioner's parental rights.[17]

West Virginia Code § 49-4-606(a) provides for the modification of a

disposition in an abuse-and-neglect proceeding.  Under that statute,

> [u]pon motion of a child, a child's parent or custodian
> or the department alleging a change of circumstances requiring
> a different disposition, the court shall conduct a hearing
> pursuant to section six hundred four [§ 49-4-604] of this article
> and may modify a dispositional order if the court finds by clear
> and convincing evidence a *material change of circumstances*
> and that the modification is in the child's best interests.

(Emphasis added).  Similarly, Rule 46 of the West Virginia Rules for Child Abuse and

Neglect Proceedings states, in relevant part, that:

> [a] child, a child's parent (whose parental rights have
> not been terminated), a child's custodian, or the Department
> shall file a motion in the circuit court of original jurisdiction in
> order to modify or supplement an order of the court at any time
> . . . . The court shall conduct a hearing and, upon a showing of
> a *material change of circumstances*, may modify or
> supplement the order if, by clear and convincing evidence, it is
> in the best interest of the child.

(Emphasis added).

---

[17] The petitioner does not challenge the circuit court's findings that modification of the disposition was in the children's best interests or that the two-prong standard for the termination of parental rights was satisfied.  *See* W. Va. Code § 49-4-604(c)(6) (2020). Rather, the petitioner's argument is procedural.

To the petitioner's point, § 49-4-606(a) and Rule 46 turn on "a material change of circumstances," and the petitioner is correct to draw a line between that concept and a condition of abuse or neglect that comes about post-disposition for which a respondent was not previously adjudicated. In fact, this Court recently held that,

> [a]llegations of abuse and neglect for which a respondent has not been previously adjudicated do not constitute a material change of circumstances for purposes of modification of a dispositional order under Rule 46 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings and West Virginia Code §49-4-606(a). Such allegations must be pleaded in a verified petition or, pursuant to Rule 19 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings, a verified amended petition, and adjudicated in accordance with the provisions of West Virginia Code § 49-4-601, *et seq*.

Syl. Pt. 3, *In re P.K.*, No. 23-729, slip op. at ii (W. Va. Nov. 5, 2025).

In *In re P.K.*, petitioner stipulated to abusing and/or neglecting the child based on allegations relating to the deplorable conditions of petitioner's home, which she shared with the child. *Id*. at 3. Later, petitioner and the child were reunited and dismissed from the case, which involved additional adult respondents and children. *Id*. at 4. Following that disposition, the DHS moved to modify the court's earlier order under West Virginia Code § 49-4-606 and Rule 46, arguing that petitioner had since failed to address the child's serious vision problems and exposed the child to registered sex offenders. *Id*. at 5. The DHS then filed an amended petition containing similar allegations. *Id*. The circuit court ultimately terminated petitioner's custodial rights to the child, applying the standard contained in West Virginia Code § 49-4-604(c)(6). *Id.* at 8.

26

On appeal, the DHS argued that the circuit court should have conducted a hearing on its initial motion to modify petitioner's disposition pursuant to Rule 46 rather than proceed on the amended petition. *Id*. at 14. We disagreed, explaining that the DHS based its motion to modify the prior disposition upon allegations that petitioner had medically neglected the child and exposed her to sex offenders, which were not "*conditions* of abuse and neglect upon which petitioner had not been previously adjudicated" and so "were properly the subject of the third amended petition." *Id*. at 15 (emphasis added).

Applying the holding of *In re P.K.*, here, we conclude that the circuit court did not err in proceeding under West Virginia Code § 49-4-606(a) and Rule 46 because it did not face allegations of a new condition of abuse or neglect for which the petitioner had not been adjudicated. Rather, the petitioner's undisputed actions following disposition in February 2022 were akin to those for which he was adjudicated in 2019 and 2021. Moreover, this Court has affirmed modifications of dispositions resulting in termination of parental rights where an adult respondent has failed to participate in proceedings following the original disposition. *See, e.g.*, *In re D.G.*, No. 22-767, 2023 WL 6144639, at *2 (W. Va. Sept. 20, 2023) (memorandum decision) (affirming modification of disposition and termination of parental rights where the petitioner "fail[ed] to communicate with her attorney and the child," and did not "participat[e] in the proceedings following the original disposition").

We further concur with the circuit court that the petitioner's circumstances materially changed between February 2022, when the Tennessee court imposed a

27

disposition that left the petitioner's parental rights intact, and June 2024, when the circuit court modified that disposition and terminated those rights. The petitioner was released from incarceration in January 2022. The next month, the Tennessee court placed the children in the "full legal and physical custody" of T.V. and R.V., while preserving his parental rights. The petitioner received notice of that disposition. T.V. and R.V. allowed the petitioner to maintain contact with the children after that; yet, by the fall of 2022, the petitioner had sabotaged that opportunity by losing his temper, cursing at R.D., and threatening R.V. Furthermore, the petitioner violated the terms of his parole and was reincarcerated in December 2022, demonstrating that he continued to suffer the consequences of his criminal behavior.

Then, in the spring of 2023, the petitioner pursued what is best described as a modification of disposition. The petitioner, incarcerated, appeared remotely for the hearing in circuit court in December 2023. Once he was released from prison in January 2024, however, the petitioner did not appear for the four hearings that followed, despite receiving notice and guidance from the circuit court to maintain contact with his guardian ad litem / appointed counsel. In short, in February 2022, a possibility existed that the petitioner could meaningfully and responsibly participate in the children's lives. But, by May 2024, the petitioner had made clear that he did not intend to seize that opportunity. Those facts demonstrate a material change in the petitioner's circumstances, not a condition

of "abuse and neglect for which [the petitioner had] not been previously adjudicated." Syl. Pt. 3, *In re P.K.*, slip op. at 18.[18]

### IV. Conclusion

Based on the preceding discussion, we reverse that portion of the June 2024 Order affirming the June 2022 Adoption Orders. We affirm that portion of the June 2024 Order modifying the disposition of the Tennessee court and terminating the petitioner's parental rights. Finally, we remand these matters. On remand, the circuit court shall: (1) vacate the June 2022 Adoption Orders and amended adoption orders entered in Case Nos. 22-A-8 and 22-A-9 on June 30, 2022, and December 19, 2022; (2) convene an emergency meeting of R.D. and S.D.'s multidisciplinary team; (3) conduct a permanency review hearing in Case Nos. 2023-JA-22, and 2023-JA-23, expeditiously; and (4) assess whether the circuit court can move forward with the current, amended adoption petitions or whether amended petitions need to be filed to move forward with the children's adoptions. The Clerk is directed to issue the mandate contemporaneously with this Opinion.

Reversed, in part, Affirmed, in part, and Remanded with directions.

---

[18] It is also important to recognize that R.D. and S.D.'s circumstances materially changed between February 2022 and May 2024. As of February 2022, the children had lived with T.V. and R.V. in West Virginia for less than one year; by May 2024, that span lengthened to three years. B.V. cared for the children for less than two years before her death, so the children's current placement with T.V. and R.V. is the longest, most stable they have known since the dependency and neglect proceeding began in Tennessee in 2019.

29